# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

BENJAMIN D. TARVER,

        Plaintiff,                       Case No. 6:26-cv-01129-AGM-DCI

        v.

MORGAN STANLEY
SMITH BARNEY LLC,

        Defendant.

_____/

## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION

Defendant, MORGAN STANLEY SMITH BARNEY LLC ("Defendant" or "Morgan Stanley"), pursuant to Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, respectfully moves for an order (1) compelling Plaintiff, BENJAMIN D. TARVER ("Plaintiff"), to arbitrate all claims asserted in the Amended Complaint [Doc. 7] in accordance with the parties' written arbitration agreement, and (2) staying this action pending completion of arbitration, as follows:

## I.  FACTUAL BACKGROUND

1.      On April 15, 2018, Plaintiff opened an E*TRADE account (the "3725 account"). Doc. 21-1, at 3 (Application).

2.      In consideration of opening his account, Plaintiff agreed to the terms and conditions set forth in the E*TRADE Customer Agreement, which contains a mandatory arbitration provision. *Id.*; Doc. 21-2 (Customer Agreement).

1

3.      The Customer Agreement (effective on or about July 17, 2017) governs the account-holder relationship, products, and services provided through E*TRADE, and it includes a provision in Section 12, entitled "ARBITRATION AGREEMENT AND DISCLOSURES."  The Agreement's arbitration clause provides, in relevant part:

> The Account Holder agrees to resolve by binding arbitration any controversy that may arise between ETRADE and the Account Holder relating in any way to the Account Holder's relationship with ETRADE, any Account held with ETRADE, or any service provided by ETRADE to the Account Holder. This arbitration agreement includes any controversy involving transactions of any kind made on the Account Holder's behalf by or through ETRADE, or the performance, construction or breach of this Customer Agreement or any other written agreement between ETRADE and the Account Holder.

Doc. 21-2, at 19, § 12 (emphasis added).

4.      The Agreement specifies that such arbitration "will be conducted in accordance with the rules then in effect of FINRA unless the rules of another self-regulatory organization to which E*TRADE is subject mandate arbitration before that organization," and that "[t]his arbitration provision will be enforced and interpreted exclusively in accordance with applicable federal laws of the United States, including the Federal Arbitration Act." *Id.* at 19-20, § 12.

5.      On October 2, 2020, E*TRADE Financial Corporation, the parent company of E*TRADE Securities LLC, merged with Morgan Stanley.[1]  In February

---

[1] The undersigned has been advised that it is for this reason why the last four of the account number when the Plaintiff opened the account (6446) are different than the last four of the current account number (3725). The undersigned has been advised that Doc. 21-1 is the account opening for the 3725 account.

2

2024, all assets and liabilities of E*TRADE Securities LLC were assumed by Morgan Stanley. "E*TRADE from Morgan Stanley" is the trade name under which the E*TRADE platform does business.

6.      As part of E*TRADE's merger with Morgan Stanley, Morgan Stanley became the successor-in-interest to E*TRADE Securities LLC, assuming all of its contractual rights, obligations, and liabilities by operation of law. Consequently, the acquisition did not void, alter, or terminate the existing Customer Agreement. Instead, Morgan Stanley stepped directly into the shoes of E*TRADE, maintaining privity of contract with Plaintiff.

7.      Plaintiff[2] brings claims for violations of the Electronic Fund Transfer Act ("EFTA") and Regulation E based on Defendant's handling of disputed ATM withdrawals and related error-resolution procedures. Doc. 7.

8.      Each claim arises out of or relates to the E*TRADE account relationship and services and falls within the Agreement's arbitration clause.

9.      Defendant has not answered or litigated the merits and now timely invokes arbitration and seeks a stay.

---

[2] This is not Plaintiff's first or only lawsuit.  Plaintiff is a serial litigant who filed fifteen lawsuits across federal and state courts within a 28-day window between April 17 and May 15, 2026.  Doc. 20. This includes five separate federal actions filed in the Middle District of Florida in just five days: *Tarver v. Capital One*, No. 6:26-cv-00849 (filed May 15); *Tarver v. TransUnion*, No. 6:26-cv-01025 (filed May 13); *Tarver v. Experian*, No. 6:26-cv-01020 (filed May 13); *Tarver v. Equifax*, No. 6:26-cv-01006 (filed May 12) ; and *Tarver v. Republic Finance*, No. 6:26-cv-00986 (filed May 11). Concurrently, Plaintiff filed 10 cases in state court in Orange County, Florida over a 20-day span (April 17–May 7) against various financial and consumer-reporting entities, including Chex Systems, Republic Finance, Merrick Bank, OneMain Financial, I.C. System, WebBank, JPMorgan Chase, Citibank, Wells Fargo, and NetCredit.

## II. ARGUMENT AND CITATION OF AUTHORITIES

"When presented with a motion to compel arbitration, a district court will consider three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp.3d 1351, 1356-57 (S.D. Fla. 2020); *see also Offshore Marine Towing, Inc. v. Gismondi*, 473 F. Supp.3d 1353, 1356 (S.D. Fla. 2020) ("'Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.'") (quoting *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999)). Here, all three factors support arbitration.

### A. A Valid Written Arbitration Agreement Exists

The Customer Agreement—agreed to by the Plaintiff to open his account with Defendant—clearly and unequivocally states the parties will agree to arbitrate claims subject to the arbitration provision set out in Section 12. Doc. 21-2, at 19-20, § 12.

When Plaintiff opened his subject-matter account: (1) Plaintiff's Application stated "I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY THE PREDISPUTE ARBITRATION CLAUSE IN SECTION 12 OF THE E*TRADE AGREEMENT"; (2) the Customer Agreement, containing the full Arbitration Clause, was *twice* hyperlinked in blue text in Plaintiff's Application; and (3) Plaintiff agreed to these terms on April 15, 2018, by providing his digital consent. Doc. 21-1, at 2-3. This

4

provision in the Plaintiff's Application and the hyperlinked Customer Agreement containing the relevant arbitration clause are not buried or hidden—they are located directly above the "Continue" action button that Plaintiff clicked to submit his Application and account agreement. *Id.*

In summary, Plaintiff assented to the arbitration terms, by clicking "Continue," which was just below an explicit statement notifying him that his account was governed by an arbitration clause. *Id.* Also, the place where the Plaintiff clicked to agree to "Continue" to open his account was below two hyperlinks for the Customer Agreement (which contains the relevant arbitration clause) that were clearly set out in a different colored font. *Id.*

In light of the placement and explicit disclosure of the arbitration provision, the Plaintiff agreed to that provision by submitting the Application and, as a result, there is an enforceable arbitration agreement between the parties. *See Derriman v. Mizzen and Main LLC*, 710 F.Supp.3d 1129, 1139 (M.D. Fla. 2023) ("Under Florida law, a browsewrap agreement is enforceable "'when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice.'") (quoting *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)); *see also Adams v. Lashify, Inc.*, 689 F.Supp.3d 1146, 1156-57 (M.D. Fla. 2023) (concluding that plaintiff was subject to a valid, written Internet Agreement and its associated arbitration clause where "a reasonably prudent user would here find this text sufficiently conspicuous to be on notice that they were agreeing to Defendant's

5

Terms of Use by clicking the "CHECKOUT" button, and Plaintiff did so at least six times").

### B. Plaintiff's Claims Fall Within the Scope of the Arbitration Provision and Therefore an Arbitrable Issue Exists

The arbitration provision agreed to by the Plaintiff in Section 12 of the Customer Agreement applies to disputes "relating in any way" to the relationship, any account, or any service provided by E*Trade. Doc. 21-1, at 19, § 12. The Plaintiff has "agree[d] to resolve by binding arbitration any controversy that may arise between E*Trade and the Account Holder" and that the arbitration provision will be enforced and interpreted under the FAA. *Id.* at 19-20, § 12. The clause's "relating in any way" language is broad and encompasses statutory and regulatory claims connected to the account relationship and services.

The three counts in the Amended Complaint allege violations of EFTA/Regulation E arising from disputed ATM withdrawals, Defendant's investigation, provisional credit, and required notices. All of those claims are tied to the E*TRADE account and services provided through E*TRADE. Count I (Failure to Properly Investigate Notice of Error) arises from handling of account transactions and error-resolution.  Doc. 7, ¶¶ 37-43. Count II (Failure to Provide Provisional Credit and Required Notices) likewise concerns account error-resolution processing and notices. *Id.*, ¶¶ 44-51. Count III (Improper Conditioning on Telephone Submission) challenges Defendant's procedures for receiving disputes connected to the account. *Id.*, ¶¶ 52-58.

These claims therefore "relat[e] in any way" to the relationship, account, and services and must be arbitrated under the Customer Agreement. Doc. 21-1, at 19, § 12. In particular, Section 12 of the Customer Agreement expressly covers controversies involving transactions made on the account holder's behalf and the performance of the Customer Agreement. *Id.* And any arguable doubt must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

### C. Defendant Has Not Waived Its Right to Arbitrate

Defendant seeks arbitration before answering or engaging in discovery or merits litigation. This case is still in its infancy (the pleadings stage). Discovery has not yet begun, and the parties will not suffer any prejudice in proceeding with contractually-agreed arbitration.

### D. A Stay of This Proceeding is Required Pending Arbitration

When all claims are subject to arbitration and a party requests a stay, Section 3 of the FAA requires a stay of this action pending arbitration. 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Defendant requests such a stay.

### III. <u>CONCLUSION</u>

Courts have found that EFTA claims are subject to arbitration and have granted motions to compel arbitration of those claims. *See, e.g.*, *Morgan v. Regions Bk.*, 2026 WL 568628, at *1-2 (M.D. Fla. Mar. 2, 2026) (granting motion to compel arbitration of EFTA and other claims and to stay proceedings); *Howse v. DirecTV, LLC*, 221 F. Supp.3d 1339, 1346 (M.D. Fla. 2016) (finding that the plaintiff's EFTA claim "is subject to arbitration pursuant to the parties' arbitration clause"). The result should be the same in this case.

For the foregoing reasons, Defendant respectfully requests this Court grant this Motion and enter an Order: (1) compelling Plaintiff to submit all claims asserted in the Amended Complaint to binding arbitration in accordance with the Agreement; (2) staying this action in its entirety pending completion of arbitration pursuant to 9 U.S.C. § 3; and (3) granting such other and further relief as the Court deems just and proper.[3]

Dated: June 19, 2026.                              Respectfully submitted,

                                          /s/ *Roger B. Handberg*
                                          ROGER B. HANDBERG
                                          LEAD COUNSEL
                                          Florida Bar No. 241570
                                          roger.handberg@gray-robinson.com
                                          **GRAY | ROBINSON, P.A.**
                                          301 East Pine Street, Suite 1400

---

[3] In addition, Defendant requests an extension of the due date for it to file an answer or an appropriate motion in response to the Amended Complaint while the Court considers this motion and the relief that has been requested. If the Court denies this Motion, Defendant requests a period of seven (7) days to respond to the Amended Complaint.

Orlando, Florida 32801
Telephone: (407) 843-8880
Facsimile: (407) 244-5690
*Counsel for Defendant, Morgan Stanley*

## LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to M.D. Local Rule 3.01(g), the movant conferred with Plaintiff via e-mail on Thursday, June 18, 2026.   Plaintiff opposes this motion and the relief requested.

*/s/ Roger B. Handberg*
ROGER B. HANDBERG

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on June 19, 2026, the undersigned electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Roger B. Handberg*
ROGER B. HANDBERG