E*TRADE from Morgan Stanley

# E*TRADE from Morgan Stanley Client Agreement for Self-Directed Accounts

***Effective August 1, 2025***

In the following agreement, the words "we," "us," "our," "Morgan Stanley," "Morgan Stanley Wealth Management," and "E*TRADE from Morgan Stanley" refer to Morgan Stanley Smith Barney LLC.[1] The words "you," "your," "yours," and "client" refer to the account owner(s) and/or authorized person(s).

This E*TRADE from Morgan Stanley Client Agreement for Self-Directed Accounts (the "**Self-Directed Account Agreement**"),[2] including all schedules, disclosures, the Important Account Information for Self-Directed Accounts; any other agreements governing transactions, products, or services available for Self-Directed Accounts; and the E*TRADE from Morgan Stanley Account Applications, are all incorporated herein by reference and set forth the terms and conditions governing your Self-Directed Account(s).

The provisions of this Self-Directed Account Agreement shall be continuous. Your heirs, executors, administrators, assigns, beneficiaries, and successors will also be bound by the terms of this Self-Directed Account Agreement, as will any successor organization or assign of Morgan Stanley. Except for the statute of limitations applicable to claims, this Self-Directed Account Agreement is governed by the laws of the State of New York (and, with respect to Individual Retirement Accounts ("**IRAs**"), Coverdell Educational Savings Accounts ("**CESAs**"), qualified retirement and welfare benefit plan accounts, the provisions of the U.S. Internal Revenue Code of 1986, as amended, or any successor tax statutes (the "**Code**"), and, to the extent applicable, the Employee Retirement Income Security Act ("**ERISA**")) without giving effect to principles of conflict of laws. If any provision of this Self-Directed Account Agreement becomes inconsistent with any applicable current or future law, regulation, or rule, that provision will be deemed changed to conform to any such law, regulation, or rule, and all other provisions of this Self-Directed Account Agreement will remain in effect and unchanged. If any provision of this Self-Directed Account Agreement is determined by a competent authority to be prohibited or unenforceable in any jurisdiction, that provision shall be deemed ineffective in that jurisdiction without invalidating the rest of this Self-Directed Account Agreement or rendering such provision ineffective in any other jurisdiction.

Unless otherwise required by Applicable Law, regulation, or rule and except as set forth in this Self-Directed Account Agreement and/or in other disclosures provided to you, you agree that neither we nor any other entity performing services in connection with this Self-Directed Account Agreement will be liable for consequential, special, or indirect damages or losses. This Self-Directed Account Agreement does not confer any rights on any third parties.

You agree that our failure to insist at any time on strict compliance with any term of this Self-Directed Account Agreement, or any delay or failure on our part to exercise any power or right given to us in this Self-Directed Account Agreement, or any continued course of conduct on our part, shall not operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude any further exercise of such power or right, notwithstanding any verbal representations to the contrary made by any of our personnel or representatives. All rights and remedies given to us in this Self-Directed Account Agreement are cumulative and not exclusive of any other rights or remedies that we otherwise have.

No provision of this Self-Directed Account Agreement can be amended or waived by you unless in writing and signed by an individual authorized to sign on behalf of Morgan Stanley.

Morgan Stanley may amend, supplement, or rescind any and all provisions of this Self-Directed Account Agreement at any time subject to Applicable Law. While Morgan Stanley will endeavor to provide 30 days' prior notice of any such amendment, supplement, or rescission to this Self-Directed Account Agreement, you understand and agree that, except as otherwise indicated, any amendment, supplement, or rescission to this Self-Directed Account Agreement will be effective as of the designated effective date.

Any amendment, supplement, or rescission of this Self-Directed Account Agreement will be posted to etrade.com when made, and such posting shall constitute proper notice to you. If you continue to maintain your Self-Directed Account(s) with Morgan Stanley after such notice, you will be deemed to have accepted such changes and will be legally bound by such amended or supplemented terms and conditions. Subject to the requirements of Applicable Law, regulation, or rule, Morgan Stanley may sell, transfer, or assign this Self-Directed Account Agreement, in whole or in part, at any time with or without notice to you. You may not sell, assign, or transfer any of your Obligations under this Self-Directed Account Agreement without the express, written, signed consent of Morgan Stanley.

We may decline to offer you any services or cancel existing services available under this Self-Directed Account Agreement at our discretion without notice to you consistent with the requirements of Applicable Law, regulation, or rule or other agreements applicable to your Self-Directed Account.

You represent that you understand the English language. You agree that English is the governing language for all of your accounts, as well as all documents and services provided by Morgan Stanley. You understand that we will rely on this representation as a material representation in agreeing to open and maintain your account(s). If necessary, you agree to consult an independent professional to assist you in understanding any material provided to you. If any document, communication, or other material provided to you by Morgan Stanley is in a language other than English, you agree that such material is meant as a courtesy translation only and is not binding.

By communicating with Morgan Stanley by telephone, you consent to the electronic recording, without notification, of any or all phone conversations with Morgan Stanley to the extent permissible under Applicable Law, regulation, or rule. You further consent to the use of any such recording as evidence in any action or proceeding arising out of this Self-Directed Account Agreement and to Morgan Stanley's erasure of any recording, at our discretion, as part of our regular procedure for the handling of recordings. Unless otherwise agreed to in writing, Morgan Stanley does not consent to the recording of phone conversations by you or any third party.

You acknowledge that bank deposits purchased through Morgan Stanley at the Federal Deposit Insurance Corporation ("**FDIC**") member institutions (including, for example, savings deposits, Bank Deposit Program ("**BDP**," as defined in the BDP Disclosure Statement) deposits, certificates of deposit, and Global Currency

deposits) are insured by the FDIC up to applicable limits. **All other investment products are not FDIC insured, are not a deposit or other obligation of a depository institution, and are not guaranteed by a depository institution. You further understand that all other investment products are subject to investment risks, including the possible loss of the entire principal amount invested.**

You understand and agree that Morgan Stanley may use your verifiable electronic signature on any written instruction or authorization, including but not limited to your Self-Directed Account Application(s), this Self-Directed Account Agreement, or any other agreement, as a true, complete, valid, authentic, and enforceable record, admissible in any judicial, administrative, or arbitration proceeding. You agree to not contest the admissibility or the enforceability of any document with your verifiable electronic signature in any proceeding between you and Morgan Stanley.

You acknowledge that this Self-Directed Account Agreement may be executed in counterparts, each of which shall be deemed an original and which together shall be deemed one instrument. This Self-Directed Account Agreement is in addition to, and not in lieu of, any other written agreements between you and Morgan Stanley. Certain features of your Self-Directed Account(s) may be subject to additional applications, terms and conditions, disclosures, acknowledgments, and agreements that also apply to your Self-Directed Account(s) or supplement this Self-Directed Account Agreement (including but not limited to the IRA and CESA custodial agreements and plan documents and the applicable qualified retirement or welfare benefit plan agreements)—all of which collectively govern your relationship with Morgan Stanley. Any unsigned or verbal agreement between you and Morgan Stanley regarding any of the terms in this Self-Directed Account Agreement is null and void.

In the event of an inconsistency or discrepancy between this Self-Directed Account Agreement and any other agreement or document, the following rules shall be used to resolve the inconsistency or discrepancy: if the inconsistency or discrepancy relates to the services provided under this Self-Directed Account Agreement, the terms of this Self-Directed Account Agreement shall govern; if the inconsistency or discrepancy relates specifically to an additional product, program, or service, the terms of the agreement or document for that product, program, or service shall govern.

Notwithstanding the foregoing, any language in this Self-Directed Account Agreement or any other agreements or documents governing your account that may conflict or be inconsistent with the applicable IRA or CESA custodial agreements and plan documents, the applicable qualified retirement or welfare benefit plan account application and agreement, or the relevant sections of the Code (including but not limited to Sections 408 and 4975 of the Code) and/or ERISA and the regulations thereunder, shall be interpreted to be consistent and in compliance with the IRA or CESA custodial agreements and plan documents, the applicable qualified retirement or welfare benefit plan account application and agreement, and the relevant sections of the Code and/or ERISA and the regulations thereunder. To the extent that it is not possible to interpret such language to be consistent and compliant with such IRA and/or CESA custodial agreements and plan documents, the applicable qualified retirement or welfare benefit plan account application and agreement, or the relevant sections of the Code and/or ERISA and the regulations thereunder, such language shall be of no force or effect to the extent of such inconsistency or noncompliance.

## 1. E*TRADE from Morgan Stanley Brokerage Services

### A. Self-Directed Investing

**You acknowledge and agree that you alone are responsible for determining the appropriateness of your investment choices in light of your particular circumstances. You further acknowledge and agree that Morgan Stanley assumes no responsibility for such determination. As a self-directed investor, you assume full responsibility for each and every transaction in and for your Self-Directed Account and for your own investment strategies and decisions.** You understand and agree that Morgan Stanley has no liability whatsoever for the results of your investment strategies, transactions, and decisions or those of your Authorized Agent(s).

### B. No Advice

You acknowledge and agree that Morgan Stanley is not providing any investment recommendations (as defined under Exchange Act Rule 15l-1) or acting as an investment advisor with respect to your Self-Directed Account and that the Service provided is brokerage and not an investment advisory service.

You understand and agree that any collection of financial data from you, and any evaluation or analysis of such data by Morgan Stanley, is to assist Morgan Stanley's compliance and risk management efforts and is not for the purpose of rendering advice regarding the profitability or appropriateness of any security, investment, financial product, investment strategy, service, or other matter for you. You acknowledge and agree that you or your Authorized Agent(s), if any, is solely responsible for all investment decisions regarding your Self-Directed Account and will not rely on any general information provided by Morgan Stanley as the sole basis for any investment decision. You also acknowledge that neither Morgan Stanley nor our affiliates assume responsibility for or guarantee the accuracy, currency, completeness, or usefulness of any general information, commentary, or other materials that may be accessed by you through the Service.

You understand and agree that marketing materials, educational materials, Market Data, research, statements of philosophy and investment principles, descriptions of strategies and risks, and generic advice are not recommendations as defined under Regulation Best Interest in Exchange Act Rule 15l-1.

### C. No Account Monitoring and No Tax, Legal, or Accounting Advice

While Morgan Stanley may make certain general information available to you, you understand and agree that under no circumstances does Morgan Stanley or our affiliates provide legal, tax, estate-planning, or accounting advice for your Self-Directed Account(s). Morgan Stanley also does not provide account monitoring as part of the Service. You alone are responsible for monitoring events related to your account holdings.

## 2. Definitions

The terms set forth below shall have the following meanings in this Self-Directed Account Agreement.

"**Access Means**" shall mean any logon, user ID, password, or authentication device by which you may access your Self-Directed Account, account features, or the Service, whether provided by Morgan Stanley or any third party.

"**Account Application**" shall mean the application that you submit to open your Self-Directed Account with Morgan Stanley, including all information provided by you to Morgan Stanley in connection with the opening or maintenance of your Self-Directed Account. It also includes any amendments or subsequent applications submitted by you to Morgan Stanley for additional Service(s) or account features and as part of which you consent to the terms and conditions of this Self-Directed Account Agreement (into which the

Account Application is incorporated by reference) and which includes an acknowledgment and agreement to the applicable disclosures presented during the account opening process and that appear on etrade.com, which may require separate endorsement(s).

"**Age of Termination**" shall mean, with respect to the Uniform Transfers to Minors Act ("**UTMA**") or the Uniform Gifts to Minors Act ("**UGMA**"), the age, under applicable state law, at which the UTMA or UGMA terminates.

"**Applicable Law**" shall mean all applicable laws, rules, and regulations, including without limitation U.S. federal, state, and local laws; the applicable laws of any foreign governmental authority; the constitution, by-laws, rules, regulations, customs, and uses of the exchange or market and its clearinghouse, if any, where any transaction for a Self-Directed Account is executed; and the applicable rules of any self-regulatory organization of which Morgan Stanley is a member.

"**ATM**" shall mean an automated teller machine.

"**Authorized Agent**" shall mean any person or entity authorized by you in writing to provide instructions to Morgan Stanley, including without limitation any person authorized by you to make investment or trading decisions on your behalf or to withdraw funds from your Self-Directed Account. The term "Authorized Agent" shall include any investment advisor selected by you, whether independently or with assistance from Morgan Stanley, and shall include fiduciaries and other parties such as UGMA or UTMA custodian, trustee, conservator, guardian, representative, administrator, executor, and attorney-in-fact.

"**Business Day**" shall mean Monday through Friday, excluding stock exchange holidays and closings. Although we may conduct business on bank holidays, bank holidays are not considered Business Days for purposes relating to banking services, which shall be further defined as certain Electronic Funds Transfer, ATM, debit card, and related banking services accessible through a Self-Directed Account and provided by a bank or other depository institution. Unless specifically noted as Business Days, the term "days" refers to calendar days.

"**Cash Account**" shall mean a Self-Directed Account in which you make all purchases for cash settlement, without credit.

"**Collateral**" shall mean all right, title, and interest in and to (a) each deposit, custody, securities, commodity, or other account maintained by you with Morgan Stanley, including without limitation your Self-Directed Account; (b) any cash, securities, commodity contracts, financial assets, or other property at any time carried in or credited to any such account; (c) all of your right, title, and interest in, to, or under any contract with, or obligation of, Morgan Stanley; (d) any of your property in which Morgan Stanley is granted a security interest (however held); and (e) all profits, dividends, interest, distributions, or other proceeds of any of the foregoing, in each case whether now existing or owned by you or hereafter arising or acquired.

"**Control Securities**" shall have the meaning provided in Rule 144 under the Securities Act of 1933, as amended.

"**Data Provider**" shall mean the Securities Information Processors, as defined in Section 11A of the Securities Exchange Act of 1934, as amended; securities and commodities futures exchanges; and data consolidators from which we receive Market Data.

"**Debit Balance**" shall mean a Self-Directed Account balance representing amounts owed to Morgan Stanley.

"**Electronic Funds Transfer**" shall mean any transfer of funds that you initiate or authorize through an electronic payment system such as the Automated Clearing House ("**ACH**") Network.

"**E*TRADE Futures**" shall mean E*TRADE Futures LLC.

"**Event of Default**" shall mean (a) any default on any Obligations under this Self-Directed Account Agreement when due; (b) your becoming bankrupt, insolvent, or subject to any bankruptcy, reorganization, insolvency, or similar proceeding, or where all or substantially all of your assets become subject to a suit, levy, enforcement, or other legal process where a secured party maintains possession of such assets; you have a resolution passed for its winding-up, official management, or liquidation (other than pursuant to a consolidation, amalgamation, or merger); you seek or become subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian, or other similar official for you or for all or substantially all of your assets; you have a secured party take possession of all or substantially all of your assets; or you take any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the foregoing acts; or (c) where any representation or warranty made or deemed made under this Self-Directed Account Agreement proves false or misleading in any material respect when made or deemed made.

"**Exchange Act**" shall mean the Securities Exchange Act of 1934, as amended.
"**FDIC**" shall mean the Federal Deposit Insurance Corporation.

"**FINRA**" shall mean the Financial Industry Regulatory Authority, Inc., of which Morgan Stanley is a member firm. Where the context requires, "FINRA" also refers to any other FINRA affiliate or division.

"**Force Majeure Event**" shall mean any act beyond Morgan Stanley's control, including any earthquake, flood, severe or extraordinary weather conditions, natural disasters or other acts of God; fire; acts of war; acts of foreign or domestic terrorism; insurrection, riot, strikes, labor disputes, or similar problems; accident; action of government; government restriction; exchange or market regulation; suspension of trading; communications, system, or power failures; cybersecurity incident; epidemic, pandemic, or disease outbreak; and equipment or software malfunction.

"**Free Credit Balance(s)**" shall mean any cash balances in your Self-Directed Account representing money owed to you as a general obligation of Morgan Stanley on demand. Morgan Stanley Smith Barney LLC is not a bank or other depository institution. Free Credit Balances are not bank deposits and are not insured by the FDIC. The Free Credit Balance is the sum of the uninvested cash in your Self-Directed Account less the following: (a) funds necessary to pay for purchase transactions due to settle on or after the date the Free Credit Balance is to be determined; (b) charges to your Self-Directed Account, including Electronic Funds Transfer and wire transfer charges; (c) credit balances that are designated as collateral for your Obligations to cover margin loans, Short Sales, and/or options positions, or credit balances not otherwise payable on demand; and (d) funds held in any sweep product (as described in Section 7 herein).

"**Good Deliverable Form**" shall mean the delivery to Morgan Stanley of freely transferable securities that are properly endorsed, registered, and fully negotiable.

"**Indemnified Parties**" shall mean Morgan Stanley, our affiliates, and their respective officers, directors, employees, and agents.

"**Loss(es)**" shall mean any and all costs, claims, liabilities, losses, judgments, awards, settlements, taxes, penalties, actions, damages, charges, expenses, or fees (including any special, indirect, or consequential loss or damage, attorney fees, and costs of collection) of any nature whatsoever.

"**Margin Account**" shall mean a Self-Directed Account that allows you to make purchases, sell securities "short," and effect options transactions using funds or securities borrowed from Morgan Stanley.

"**Market Data**" shall mean all data distributed by Morgan Stanley regarding bids, offers, and market transactions and all information based on any such data.

"**NYUCC**" shall mean the Uniform Commercial Code, as adopted and enacted and as in effect from time to time in the State of New York.

"**Obligations**" shall mean any and all of your obligations to Morgan Stanley arising at any time and from time to time under or in connection with any and all agreements, including this Self-Directed Account Agreement, with Morgan Stanley (including but not limited to obligations to deliver or return margin or other assets or property (howsoever described) under or in connection with any such agreement), in each case whether now existing or hereafter arising, whether or not mature or contingent.

"**Pattern Day Trader**" shall have the meaning provided in FINRA Rule 4210.

"**PIN**" shall mean personal identification number.

"**Restricted Securities**" shall have the meaning provided in Rule 144 under the Securities Act of 1933, as amended.

"**SEC**" shall mean the U.S. Securities and Exchange Commission.

"**Securities Act**" shall mean the Securities Act of 1933, as amended.

"**Self-Directed Account**" shall mean each Self-Directed Account at Morgan Stanley receiving the Service and established in your name alone, in your name together with others, or in which you have a beneficial interest.

"**Self-Directed Account Agreement**" shall mean the E*TRADE from Morgan Stanley Client Agreement; applicable supplements, schedules, and exhibits; the Account Application; and any other agreement required to be entered into as a result of the account services or account type selected, all of which are incorporated by reference, entered into between you and Morgan Stanley, which you agree to abide by when you open any Self-Directed Account, as may be amended from time to time, and which sets forth the terms and conditions under which Morgan Stanley will establish and maintain one or more Self-Directed Accounts on your behalf and will otherwise transact business with you. If you participate in other services provided by Morgan Stanley, or elect certain account types, that require you to agree to other specific terms and conditions (including electronically, through electronic signature, clicks, or other actions) or otherwise, such terms and conditions will be deemed an amendment and will be incorporated into and made part of this Self-Directed Account Agreement.

"**Self-Directed Retirement Account**" shall mean IRAs, Roth IRAs, SIMPLE IRAs, CESAs, and qualified retirement and welfare benefit plan accounts.

"**Service**" shall mean the securities brokerage, commodity futures brokerage, financial, custody, and other services and the online trading platforms and mobile applications that E*TRADE from Morgan Stanley may offer from time to time.

"**Settlement Date**" shall mean the date that a purchase or sale in your Self-Directed Account is scheduled to be paid for or delivered.

"**Short Sale**" shall mean the sale of a security required to be marked "short" in accordance with Applicable Law. A Short Sale is generally any sale of a security where you are not net "long" in which you intend to satisfy by delivery of borrowed securities or in which you do not intend to deliver in Good Deliverable Form by the Settlement Date.

## 3. General Account Terms

### A. Current and Accurate Information; Account Ownership

You agree that the information you have provided on the E*TRADE from Morgan Stanley Account Application(s) is current, accurate, and complete. You agree to promptly notify us of any change to the information provided on the Account Application(s). You agree to indemnify and hold Morgan Stanley harmless from and against any Losses arising out of or relating to your failure to provide true and accurate information on the Account Application(s) or to update such information. You represent that no one else has an ownership interest in your Self-Directed Account except for those persons whom you have identified on the Account Application(s).

### B. Fees and Commissions

The brokerage commissions, fees, and other charges applicable to your Self-Directed Account are generally set forth in the E*TRADE from Morgan Stanley Fee Schedule ("**Fee Schedule**"), which is available on etrade.com and is incorporated by reference into this Self-Directed Account Agreement. We may, at our discretion, modify the Fee Schedule at any time, with or without notice, and modifications are effective as of the designated effective date. Your continued use of the Service will evidence your consent to any modifications to the Fee Schedule.

You agree to promptly pay all brokerage commissions, charges, securities-borrowed fees, regulatory pass-through fees, and other fees as may be applicable to your Self-Directed Account or any transaction in your Self-Directed Account based on the then-effective Fee Schedule. You understand and agree that order executions that take place over multiple Business Days may be assessed separate commissions and fees on each day of execution. We may require a minimum balance for Self-Directed Accounts, assess account fees for inactive Self-Directed Accounts, and assess fees for terminations or transfers of Self-Directed Accounts. In addition, you agree to pay all taxes applicable to your Self-Directed Account. You authorize Morgan Stanley to automatically debit your Self-Directed Account for any brokerage commissions, charges, fees, and taxes.

Certain fees and charges applicable to your Self-Directed Account for a particular Service may be assessed in conjunction with such Service and may not be included in the Fee Schedule. You agree to promptly pay all such fees and charges as a term and condition of using the particular Service. We reserve the right to negotiate different fees and charges than those included in the Fee Schedule or elsewhere, including variable-rate commissions and interest charges.

You understand that you will be provided with an indicative "borrow rate" for a hard-to-borrow security at the time you preview a short sell order for that security but that the actual "borrow rate" for the security may be different.

### C. Applicable Law

You understand and agree that all transactions in your Self-Directed Account are subject to Applicable Law. In no event will Morgan Stanley be obligated to effect any transaction or act on any instruction that we believe would violate Applicable Law. You agree that Morgan Stanley and you are each obligated to comply with Applicable Law. You acknowledge that the Service is inherently a U.S. service, subject to an extensive framework of U.S. laws and regulations.

Morgan Stanley shall have no duty to determine whether you are in compliance with Applicable Law, and Morgan Stanley shall not be liable to you as a result of any action or inaction taken by Morgan Stanley to comply with Applicable Law. If there is a change in any Applicable Law that is inconsistent with any provision herein, the affected provision shall be deemed modified or superseded, as the case may be, by the Applicable Law, and all other provisions of this Self-Directed Account Agreement shall in all respects continue in full force and effect. You acknowledge and agree that the terms of this Self-Directed Account Agreement do not create a private right of action.

## D. Taxpayer Identification Number and Backup Withholding

You understand and agree that you may be subject to backup withholding tax at the appropriate rate on all dividends, interest, and gross proceeds paid to you if you do not provide the correct taxpayer identification number to Morgan Stanley. We send backup withholding taxes to the appropriate taxing authority. We will not refund any backup withholding taxes that resulted from your error.

## E. International Accounts

You agree and understand that if you executed this Self-Directed Account Agreement electronically, you are doing so via a server in the United States, and this Self-Directed Account Agreement will be deemed to be executed in the United States.

You represent and warrant to Morgan Stanley that you have requested to open one or more Self-Directed Account(s) with Morgan Stanley on an unsolicited basis without any marketing or promotion by Morgan Stanley or our personnel and you have requested the necessary account opening documents from Morgan Stanley.

## F. Account Types

Morgan Stanley offers many different types of Self-Directed Accounts, including Retirement Accounts; custodial, business, and other nonpersonal accounts; and estate, trust, nonprofit, and partnership accounts. Self-Directed Account types may be subject to certain restrictions and eligibility requirements, and certain Services are not available for every account type, including without limitation accounts owned by clients residing outside the United States. Although we may provide educational tools describing Self-Directed Account types, you are responsible for selecting the account type that is appropriate for your needs and circumstances. We reserve the right to limit the number of Self-Directed Accounts that you maintain, or have a beneficial interest in, at any one time. You understand and agree that your use of a single logon or user ID may not qualify you for promotional benefits by opening multiple accounts.

i. **Multiple-Party Accounts**

You understand and agree that if there is more than one account owner, the legal ownership of your Self-Directed Account will be as designated on the Account Application as Joint Tenants with Rights of Survivorship, Tenancy in Common, or Community Property. If no designation is made, each account owner directs Morgan Stanley to establish the Self-Directed Account as a Joint Tenants with

Rights of Survivorship account. In the limited case where a Joint Tenants by the Entirety account becomes custodied at Morgan Stanley, your Self-Directed Account will be subject to and administered in accordance with this Section 3.F.i "Multiple-Party Accounts."

You understand and acknowledge that you authorize Morgan Stanley to follow the instructions of any account owner concerning any matter pertaining to the multiple-party Self-Directed Account. Each account owner has full authority, acting individually and without notice to any other account owner (including as Authorized Agent on behalf of any other account owner(s)), to take action on behalf of your Self-Directed Account and provide instructions to Morgan Stanley as fully and completely as if they were the sole account owner. If there is more than one account owner, each of you agrees to be jointly and severally liable for all Obligations arising under this Self-Directed Account Agreement or otherwise relating to your Self-Directed Account, including, as mentioned herein, where you have designated the legal ownership of your Self-Directed Account as a Joint Tenants by the Entirety account, whether or not you participate in the transaction or benefit from its proceeds, including responsibility for orders entered through the Service or using any Access Means, regardless of whether you give such instructions, enter such orders, or change any Access Means. This includes any purchase or sale of securities (on margin or otherwise) for your Self-Directed Account and any delivery or disbursement of any Collateral credited to your Self-Directed Account, payable jointly or individually.

Morgan Stanley is not responsible for determining the purpose or propriety of any instruction received from any account owner as against any other account owner, the disposition of payments or deliveries of Collateral between or among account owners, or the notification to the other account owners of such action taken by any one account owner. You understand and agree that notice provided to any one account owner will be deemed to be notice to all account owners for all purposes. In no case shall such ownership in any way impair, alter, or prejudice Morgan Stanley's ability to enforce any Obligations against one or all account owners.

Morgan Stanley is further authorized, at our discretion, to disclose any information about any multiple-party account owner and any of their accounts to address possible financial exploitation or to confirm the specifics of your current contact information, whereabouts, or health status or the identity of any legal guardian, executor, trustee, or holder of any power of attorney with any other multiple-party account owner.

Notwithstanding the foregoing, Morgan Stanley, at our discretion, reserves the right to require written instructions from one or all account owners. Each multiple-party account owner agrees to hold Morgan Stanley harmless from, and indemnify Morgan Stanley against, any losses, causes of action, damages, or expenses arising from, or as the result of, Morgan Stanley's following the instructions, or declining to follow the inconsistent instructions, of any multiple-party account owners. In the event that Morgan Stanley receives inconsistent instructions from two or more account owners regarding the multiple-party Self-Directed Account(s), including but not limited to purchase and sale orders, including Short Sales, or funds or securities disbursement requests, we are authorized, at our discretion and without incurring any liability due to fluctuating market conditions or otherwise, to do any one or more of the following: (a) suspend all activity in the multiple-party Self-Directed Account(s); (b) refuse to buy, sell, or trade any security and/or refuse to disburse any funds and/or securities except on receiving written instructions signed by all of the account owners; (c) close the multiple-party Self-Directed Account(s) and send you all funds, monies, or other Collateral

to the address of record; or (d) file an interpleader action in any court with proper jurisdiction, in which event we shall be entitled to recover from you all costs, including but not limited to attorney fees associated with such action. Morgan Stanley shall be entitled to recover from any of your Self-Directed Accounts or from any multiple-party account owner prior to distribution of funds, securities, and/or Collateral any costs we may incur, including but not limited to attorney fees, as the result of any dispute between and/or among the account owners and/or their representatives or heirs relating to the multiple-party Self-Directed Account(s).

In the event of a dispute among account owners, such as a pending divorce or litigation, where Morgan Stanley has notice, including where Morgan Stanley receives notice from an account owner of a Joint Tenants by the Entirety account revoking the authority of the other account owner(s) of such Joint Tenants by the Entirety account to act on the account owner's behalf, you understand and agree that Morgan Stanley reserves the right, but is not obligated, to place restrictions on your Self-Directed Account. For example, if an account owner requests that a restriction be placed on access to funds in your Self-Directed Account, Morgan Stanley may prohibit all transfers of funds from your Self-Directed Account, including canceling check-writing and debit card privileges, with such restrictions to remain in place until Morgan Stanley actually receives and has a reasonable amount of time to act on appropriate court documentation or a written, notarized instruction signed by all the account owners. In such a case, you understand and agree that all account owners remain liable for any pending checks that have not yet cleared at the time the restrictions were put in place.

You understand and agree that Morgan Stanley also may, at the expense of the account owners, commence or defend any action or proceeding for or in the nature of interpleader to have the dispute resolved judicially. If a suit or proceeding for or in the nature of interpleader is brought by or against Morgan Stanley, you understand and agree that Morgan Stanley may liquidate the securities positions in your Self-Directed Account and deliver the proceeds into the registry of the court, at which time Morgan Stanley will be deemed to be and will be released and discharged from all further Obligations and responsibilities under this Self-Directed Account Agreement.

Each account owner agrees that, on the death or disability of another account owner, divorce of married account owners, or other event that causes a change in ownership or the account owner's capacity with respect to the Self-Directed Account, the remaining account owner(s) will immediately notify Morgan Stanley of such change of ownership or capacity. In such event, Morgan Stanley will not be responsible for any transfers, payments, or other transactions in the Self-Directed Account initiated at the direction of a former account owner, surviving account owner, or incapacitated account owner until Morgan Stanley has actually received and had a reasonable amount of time to act on such notice. Following receipt of such notice, Morgan Stanley may require additional documents and may reserve the right to retain such assets in and/or restrict transactions in the Self-Directed Account as Morgan Stanley deems advisable at our discretion. Any former account owner and the estate of any deceased or incapacitated account owner will remain jointly and severally liable to Morgan Stanley for any Losses in the Self-Directed Account arising out of or relating to transactions initiated before Morgan Stanley actually received and had a reasonable amount of time to act on such notice.

The pledge, assignment, or other transfer by an account owner of such person's interest as a joint tenant in a Joint Tenants by the Entirety account shall require written notice to Morgan Stanley and the written consent of the other account owner. In the case of any such transfer, unless otherwise

directed by the transferring account owner and the assignee and consented to by Morgan Stanley, the Self-Directed Account will be deemed to be reconstituted as a Joint Tenants with Rights of Survivorship account among the assignee and the remaining account owner(s), and the assignee and the remaining account owner(s) shall be required to agree to, acknowledge, and execute this Self-Directed Account Agreement.

If you request that Morgan Stanley establish your Self-Directed Account as a Joint Tenants by the Entirety account and we comply with your request, it is with the understanding and your representations that (a) you are lawfully married to each other and (b) you maintain your residence in a state permitting intangible property to be owned as tenants by the entirety. You agree to promptly notify us if either of these circumstances changes. Morgan Stanley reserves the right to require the signature or consent of both account owners of a Joint Tenants by the Entirety account at any time with respect to any instruction.

From time to time, married individuals who reside in community property states may choose to include a community property designation in the joint account titling. In such cases, it is the account owners' responsibility to determine if this type of ownership is permitted under their state law. Account owners may seek counsel to determine the availability and impact of the community property designation. Self-Directed Accounts bearing the community property designation will be subject to the terms of this Section 3.F.i "Multiple-Party Accounts" provision. Morgan Stanley may reasonably rely on the instructions provided by one account owner in a jointly owned community property Self-Directed Account, and the account owners agree to indemnify and hold Morgan Stanley harmless from any claims, losses, or damages caused by or related to Morgan Stanley's reliance on any instructions received from one account owner.

ii. **Custodial Accounts**

If the Self-Directed Account is opened under either the UGMA or the UTMA, the custodian represents that all assets in the Self-Directed Account belong to the minor beneficiary and that the custodian will use the assets only for lawful purposes and for that beneficiary's benefit or for the reimbursement of expenses already incurred for lawful purposes and for the beneficiary's benefit. The custodian agrees to promptly transfer and deliver to the beneficiary all securities and other property held in the Self-Directed Account upon the beneficiary's attaining the Age of Termination specified by the governing state's law.

If the custodian does not indicate the state whose Age of Termination applies to the Self-Directed Account, the custodian understands and agrees that the Self-Directed Account will be set up using the Age of Termination in the custodian's state of residence as indicated in the custodian's account opening documentation. If the Age of Termination selected is different from the applicable state's Age of Termination, the custodian understands and agrees that they are responsible under the applicable UGMA or UTMA for determining the proper Age of Termination and that Morgan Stanley is not responsible for doing so.

Upon the termination of the custodianship, the custodian agrees to provide to Morgan Stanley, on request, the beneficiary's address, phone number, and any other information that may help Morgan Stanley contact the beneficiary. In addition, the custodian acknowledges that Morgan Stanley may restrict the custodian's access to the Self-Directed Account upon termination of the custodianship.

The custodian understands and agrees that once Morgan Stanley has reason to believe that the beneficiary has reached the Age of Termination, we may, but are not obligated to, take any or all of the following actions with respect to the custodial account without notice to you or consent from you: (a) limit trading in the custodial account to liquidating or closing transactions; (b) restrict deposits into the custodial account; (c) restrict withdrawals or transfers from the custodial account; (d) communicate with the beneficiary or the beneficiary's representative regarding the custodial account, including but not limited to providing account documents and information; (e) accept liquidating or closing transactions from the beneficiary; and/or (f) transfer the custodial account assets to the beneficiary.

## G. Account Deposits; Use of Funds

Morgan Stanley accepts deposits to your Self-Directed Account via check, wire, and other sources. We also credit your Self-Directed Account for securities sales proceeds, interest, dividends, and other distributions on Collateral in your Self-Directed Account. Prior to our actual receipt of final payment, we may, as a matter of bookkeeping convenience, credit your Self-Directed Account with funds deposited to your Self-Directed Account; the proceeds from the sale, redemption, or other disposition of Collateral; and income payable on Collateral. You agree that such bookkeeping credits may also be reflected as "immediately available" or "same day" funds or by some other characterization. Notwithstanding any such credit or characterization, all such credits shall be conditional on our actual receipt of funds or final payment and may be reversed by us to the extent that final payment is not received by us.

With respect to the use of funds, you acknowledge and agree that:

i. funds reflected as "immediately available" or "same day" funds or by some other characterization are available for investment but may not be available for transfer out of your Self-Directed Account to an external account;

ii. settled funds are used first to fund investments;

iii. unsettled funds cannot be transferred out of a Cash Account or withdrawn via direct debit transactions or otherwise to a third-party institution;

iv. it is your responsibility to monitor transactions and transaction settlements to avoid withdrawals of unsettled funds; and

v. the use of unsettled funds may trigger margin interest charges.

If Morgan Stanley, at our discretion, permits you to use funds credited to your Self-Directed Account prior to receipt by Morgan Stanley of final payment thereof, you shall nonetheless continue to bear the risk of, and the liability for, Morgan Stanley's nonreceipt of final payment in full; and to the extent that final payment in full for any Collateral delivered on any Business Day is not received by Morgan Stanley by the close of business on such day, you agree to immediately on demand reimburse Morgan Stanley for the amount so used in anticipation of final payment plus interest thereon, from and including the Business Day on which such final payment should have been received, until such amount is repaid in full.

Morgan Stanley reserves the right, at our discretion and without advance notice, to refuse certain types of additions of funds to your Self-Directed Account, including third-party checks and previously returned items. Morgan Stanley reserves the right to require that you make requests for withdrawals from your Self-Directed Account in writing or to take other steps to verify the accuracy of withdrawal requests and the

authorization of the party submitting instructions. You understand and agree that it is your responsibility to ensure that the instructions and information that you provide to Morgan Stanley in connection with any cash transfer are accurate.

### H. Liability for Failing to Make Transfers

If Morgan Stanley does not complete an Electronic Funds Transfer to or from your Self-Directed Account on time or in the correct amount, we may be liable to you for your losses or damages in certain circumstances. You understand and agree, however, that Morgan Stanley will not be liable in the case of any of the following.

- We do not receive the request within a reasonable time to act on your or your Authorized Agent's instructions.
- Through no fault of Morgan Stanley, you do not have enough available funds in your Self-Directed Account to make the transaction.
- The transfer would cause an overdraft.
- The ATM where you made the transaction did not have enough cash.
- Circumstances beyond Morgan Stanley's control (as identified under "Force Majeure Event") or a rolling blackout prevent or delay the transfer despite reasonable precautions taken by Morgan Stanley.
- The Service, ATM, or point-of-sale terminal was not working properly, and you or your Authorized Agent knew about the problem when you or your Authorized Agent started the transaction.
- The funds in your Self-Directed Account are restricted, subject to legal process or an uncollected funds hold, or otherwise not available for withdrawal.
- The information supplied by you, your Authorized Agent, or a third party is incorrect, incomplete, ambiguous, or untimely.
- Morgan Stanley has reason to believe that the transaction may not have been authorized by you or your Authorized Agent.
- The transaction cannot be completed because your debit card is damaged.
- The payment is processed in a timely manner, but the payee rejects the payment or fails to process it in a timely manner.
- You or your Authorized Agent fails to follow instructions for how to make a transfer or bill payment.
- In the event of any other exceptions stated herein or permitted by Applicable Law.

Notwithstanding the foregoing, Morgan Stanley will not be responsible or liable for any consequential, special, or indirect damages you may suffer as a result of (a) our failure to complete a transfer to or from your account on time or in the correct amount or (b) funds that are otherwise improperly transferred.

### I. Funds Transfers

By sending Morgan Stanley a wire transfer, check disbursement, or real-time payment (or other such faster payment service that may be made available (collectively "**Instant Payments**")) request (whether by telephone, electronically, or in writing), you authorize Morgan Stanley and our bank service provider to initiate such wire transfer, check disbursement, or Instant Payment on your behalf and to transmit payment instructions to the applicable bank. If a wire transfer, check disbursement, or Instant Payment request is received after the relevant cutoff time, your request may be treated as though it were received the next Business Day. Morgan Stanley may, at our discretion, reject any wire transfer, check disbursement, or Instant Payment request.

You understand and agree that it is your responsibility to ensure that your instructions are accurate before requesting that Morgan Stanley initiate a wire transfer, check disbursement, or Instant Payment. A wire transfer, check disbursement, or Instant Payment request cannot be amended or canceled after Morgan Stanley receives it. Morgan Stanley may, at our sole discretion, attempt to abide by a subsequent request for a change, but we are not obligated to do so.

You understand and agree that if you arrange for a wire transfer or Instant Payment to be directed to your Self-Directed Account, you are responsible for ensuring that such wire transfer or Instant Payment is initiated properly, is addressed correctly to your Self-Directed Account, and bears appropriate wire instructions or Instant Payment instructions in exactly the form required by Morgan Stanley for identification of you and your Self-Directed Account. You understand that any erroneous, mismatched, or incomplete identifying information on an incoming wire transfer or Instant Payment may result in such wire transfer or Instant Payment being rejected, lost, posted to an incorrect account, or returned to the originating bank without notice to you.

You agree to indemnify and hold Morgan Stanley harmless from any claims, losses, or damages caused by or related to any such Instant Payment transactions or any errors or other issues with transmission through an Instant Payment service, including but not limited to a real-time payment service.

### J. Inactive Accounts; Escheatment

Inactive accounts and the escheatment process are governed by the unclaimed-property laws of the state of the last known address of the account owner.

To avoid escheatment of assets in your Self-Directed Account, you must demonstrate activity in your Self-Directed Account or contact Morgan Stanley. If your Self-Directed Account becomes inactive and you do not reactivate your Self-Directed Account or respond to notification(s) regarding the status of your Self-Directed Account, state law requires that Morgan Stanley deliver the assets as unclaimed property to the state of your last known residence. If your last known address is outside the United States, assets will be delivered to the state of incorporation for Morgan Stanley. Once remitted, the assets will be held by the state for safekeeping in accordance with state regulations. You will then need to contact the respective state agency to reclaim the property.

## 4. Checks, Check-Writing, and Debit Cards

### A. Check-Writing and Debit Card Privileges

You understand and agree that by requesting or using check-writing or debit card privileges offered for eligible account types, you authorize Morgan Stanley to honor debit card transactions and checks drawn on your Self-Directed Account, with payment for such checks and transactions made by withdrawing cash

or redeeming securities from your Self-Directed Account. You agree to pay all fees and charges associated with check-writing and debit card services as set forth in the Fee Schedule and any third-party fees. You understand and agree that original canceled checks are not returned to you; however, imaged copies are made available online, and all check-writing and debit card activity is reflected on your account statement(s). If you decide that you do not want to use your debit card, you agree to destroy it.

Check-writing and debit card privileges are processed through a bank service provider retained by us, which may include Morgan Stanley Private Bank, National Association and/or Morgan Stanley Bank, N.A. You understand and agree that we may change the terms of or terminate your check-writing or debit card privileges at any time with notice in accordance with this Self-Directed Account Agreement or Applicable Law, with or without cause and without affecting your outstanding Obligations under this Self-Directed Account Agreement.

When your Self-Directed Account is closed or your debit card or check-writing privileges are canceled or terminated, you agree to promptly destroy your debit card and any unused checks, and we may require that you provide proof of destruction before releasing funds in your Self-Directed Account. Alternatively, you understand and agree to return your debit card or unused checks to us promptly on request. You also understand and agree that Morgan Stanley has the right to cause an ATM to retain your debit card at any time without prior notice to you.

### B. Signature Card

We may require that you provide a proper sample signature on a signature card before you can participate in our check-writing service. If your Self-Directed Account has multiple authorized users, we may require a proper sample signature from each person.

### C. Loss of Checks; Debit Card and PIN Security

You agree to notify us immediately, and in no event no more than 24 hours, after the loss or theft of any check or debit card, or if you believe that their PIN or password has been lost or stolen, by contacting us through etrade.com, by calling 800-387-2331 (or +1 678-624-6210 from outside the United States), or by writing to:

E*TRADE from Morgan Stanley
Attn: Cash Management Services
PO Box 484
Jersey City, NJ 07303-0484

You agree to not disclose or otherwise make your account number, Access Means, debit card, or PIN available to others. Debit card transactions are not considered unauthorized if they are made by a co–account owner, an Authorized Agent, or any other person with an interest in or authority to transact business on your Self-Directed Account, even if the person exceeds any authority that you have given them.

### D. Cooperation in the Event of Loss or Fraud

You understand and agree that, in the event of the loss or theft of your checks or debit card or of any fraudulent occurrence in your Self-Directed Account, including the writing of forged checks, the altering of checks written against your Self-Directed Account, the forging of endorsements on checks written against your Self-Directed Account, or the unauthorized use of your debit card, you will report such loss or

fraudulent occurrence promptly to the police. You agree to provide a copy of any police report to us on request. You agree to cooperate fully with Morgan Stanley in any investigation of such fraudulent occurrence and will complete any required affidavits promptly, accurately, and thoroughly.

### E. Liability for Unauthorized Electronic Funds Transfers

You understand and agree that if someone used your debit card, PIN, or password without your permission and you inform us within two Business Days, you can lose no more than $50. You understand and agree that if you do not tell us within two Business Days after you have learned of the loss or theft of your debit card, PIN, or password and we can prove that, had you told us, we could have stopped someone from using your debit card, PIN, or password without your permission, you could lose as much as $500. Unless we determine that you were grossly negligent or fraudulent in your handling of your Self-Directed Account or debit card, you will not be liable for the $50 or $500 amounts described here for transactions conducted with your debit card.

You understand and agree that you will inform us *immediately* if your statement shows transfers that you did not make. You understand and agree that if you do *not* tell us within 60 days after your statement was mailed to you, you may not get back any money that you lost after the 60 days if we can prove that we could have stopped someone from taking the money had you informed us in time. You further understand and agree that the provisions of this Section 4.E "Liability for Unauthorized Electronic Funds Transfers" apply only to Electronic Funds Transfers noted on your Self-Directed Account statement that you believe were unauthorized.

Morgan Stanley will, at our discretion, extend the time periods in connection with any justifiable delay.

You understand and agree that, except as limited by Applicable Law, you are liable for all unauthorized transactions made with your debit card or the PIN associated with your debit card that occur prior to the time that you notify us to cancel your debit card, that an unauthorized transaction has taken place, or that your debit card or PIN has been lost or stolen.

You understand that if you fail to notify Morgan Stanley or our bank service provider of unauthorized transactions within 60 days of the date of the first statement showing unauthorized activity, you will be liable for unauthorized transactions that occur after the 60-day period.

### F. In Case of Errors or Questions About Electronic Transfers

If you believe that your statement shows unauthorized transfers or you need more information about an electronic transaction, you agree to contact us through etrade.com, call 800-387-2331 (or +1 678-624-6210 from outside the United States), or write to us at the above address as soon as you can. You understand and agree to notify Morgan Stanley no later than 60 days after we sent the *first* statement on which the problem or error appeared. When you contact us, you will:

i. provide your name, Self-Directed Account number, and debit card number;

ii. describe the error or the transfer in question and explain as clearly as possible why you believe it is an error or why you need more information; and

iii. provide the dollar amount of the suspected error.

You understand that it would be helpful to provide us with any supporting documentation related to the error. You understand and agree that if you inform us orally, we may require that you send us your complaint or question in writing within 10 Business Days.

After we hear from you, within 10 Business Days we will determine whether an error occurred and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide that we need more time to investigate, we will credit your Self-Directed Account within 10 Business Days for the amount that you think is in error so that you will have the use of the money during the time it takes us to complete our investigation. In certain instances, we may provide credit sooner. You understand and agree that if we request that you submit your complaint or question in writing and we do not receive it within 10 Business Days, we may not credit your Self-Directed Account.

You understand and agree that for errors involving new Self-Directed Accounts, point-of-sale transactions, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new Self-Directed Accounts, we may take up to 20 Business Days to credit your Self-Directed Account for the amount that you think is in error.

After completing our investigation, we will tell you the results within three Business Days. If we determine that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

You understand and agree that this Section 4.F "In Case of Errors or Questions About Electronic Transfers" provision applies only to Electronic Funds Transfers noted on your Self-Directed Account statement that you believe are unauthorized.

### G. Payment of Checks

You understand and agree that when processing checks drawn on your Self-Directed Account, Morgan Stanley and our bank service provider generally pay larger checks first, but we are not obligated to do so and may change the order in which we process transactions without prior notice to you. This may result in a greater number of insufficient fund ("**NSF**") charges and the possibility of returned items. To avoid NSF charges, you should ensure that your Self-Directed Account contains sufficient funds for all checks drawn on it.

### H. Overdrafts

You understand and agree that if you do not have sufficient available funds on deposit to cover the amount of a check or transaction (e.g., an automatic payment, ATM withdrawal, debit card transaction, or other Electronic Funds Transfer), Morgan Stanley and our bank service provider may return the check or reject the transaction without payment. If checks or other transactions are presented to us for payment on the same day as any securities transaction(s) in your Self-Directed Account (whether pursuant to your request or otherwise), the securities transaction(s) will be settled before checks or other transactions are paid.

Morgan Stanley and our bank service provider may, at our discretion, elect to cause an overdraft by paying a check or permitting a transaction. You understand and agree that the allowance of transactions that cause overdrafts in no way obligates Morgan Stanley and our bank service provider to continue this practice, and we may cease doing so without prior notice to you. We reserve the right to charge a service fee for each overdraft item or transaction. If we permit an overdraft, you agree to promptly pay the amount of the overdraft together with interest on the overdraft at the maximum rate of interest allowed by Applicable Law. You agree that, to the fullest extent permitted by Applicable Law, subsequent deposits and

other credits to your Self-Directed Account may be used to satisfy an overdraft, regardless of the source of such deposits, including without limitation deposits of government, welfare, retirement, or Social Security benefits.

### I. Business and Other Nonpersonal Accounts

Morgan Stanley's obligations and the limitation on client liability set forth in this Self-Directed Account Agreement under Section 3.H "Liability for Failing to Make Transfers," Section 4.E "Liability for Unauthorized Electronic Funds Transfers," and Section 4.F "In Case of Errors or Questions About Electronic Transfers," as well as those that appear with periodic statements, do not apply to business or other nonpersonal accounts. Thus, if your Self-Directed Account is for a business or other entity that is not a natural person, you must notify Morgan Stanley immediately if you discover any unauthorized transactions or errors associated with your Self-Directed Account. You understand and agree that you must also send Morgan Stanley a written notice of the problem within a reasonable time not to exceed 14 days from the date of discovery or your receipt of the first statement or notice reflecting the problem, whichever occurs first.

Under no circumstances will Morgan Stanley be liable for Losses, including any special or consequential damages involving such unauthorized transactions, in business or other nonpersonal Self-Directed Accounts. You assume sole responsibility for any unauthorized use of your Self-Directed Account's debit cards and/or PIN and shall indemnify, defend, and hold Morgan Stanley harmless from and against all Losses and damages related to or arising out of any unauthorized transactions.

## 5. Foreign Currency

You understand and agree that if you conduct a transaction (e.g., an ATM withdrawal or a debit card transaction) in a currency other than U.S. dollars, the merchant, network, or processor will convert any related debit or credit into U.S. dollars in accordance with its then current policies. You understand and agree that the conversion rate applied may be different from wholesale interbank foreign-currency rates in effect on the date of your transaction, and the conversion rate may include or reflect a foreign-currency conversion fee. For more information about fees, please refer to "Pricing and Rates" at us.etrade.com/what-we-offer/pricing-and-rates.

If you submit a wire transfer or check disbursement request that involves a currency other than U.S. dollars, your funds will be exchanged for such currency at the current rate of exchange according to our standard business procedures. You understand and agree that currency exchange rates fluctuate over time, and you accept the risks of such fluctuation between the time you send a wire transfer or check disbursement request and the time the wire transfer or check disbursement is final. You further understand and agree that when Morgan Stanley executes a foreign-currency transaction request, the foreign exchange rate may include a spread or markup as compensation to Morgan Stanley and our bank service provider for providing this service and that foreign wire transfers and check disbursements may be subject to additional fees.

Morgan Stanley and our bank service provider may, at our discretion, refuse to accept any item payable in a foreign currency. In the event that Morgan Stanley and our bank service provider accept an item payable in a foreign currency, you agree to pay any fees that Morgan Stanley and our bank service provider may incur to convert foreign-currency items that you place into your Self-Directed Account, including any fee charged by the Board of Governors of the Federal Reserve.

Morgan Stanley may, at our discretion, impose additional fees for foreign items. Morgan Stanley reserves the right to change the amount of any fee imposed at any time. You understand and agree that neither Morgan Stanley nor our bank service provider is responsible for any Losses you may incur in connection with the deposit of items payable in a foreign currency, including any Losses resulting from delays in processing such items.

## 6. Self-Directed Retirement Accounts

You understand and agree that certain Service and account features are not available to Self-Directed Retirement Accounts. You understand and agree that when Morgan Stanley provides "investment advice" regarding a Self-Directed Retirement Account, we are a "fiduciary" as those terms are defined under ERISA or Section 4975 of the Code, as applicable. You understand and agree that when we provide investment education, take orders on an unsolicited basis, or otherwise do not provide "investment advice," Morgan Stanley will not be considered a "fiduciary" under ERISA and/or Section 4975 of the Code.

Additionally, activity in a Self-Directed Retirement Account may have different consequences, including different tax consequences, were the same activity to occur in or be effected through an account other than a Self-Directed Retirement Account. You understand and agree that you will be required to enter into one or more additional agreements with us when opening a Self-Directed Retirement Account, the terms and conditions of which will become part of this Self-Directed Account Agreement.

### A. Check-Writing and Debit Cards

If you request check-writing or debit card services for an IRA, you understand and agree that only you may authorize withdrawals from the Self-Directed Retirement Account, and you certify that each withdrawal is at your request and under your signature or PIN.

## 7. Cash Sweep and Payment of Interest on Free Credit Balances

You understand and agree that, if you are eligible, we are authorized without further direction from you to automatically deposit, or "sweep," Free Credit Balances in your Self-Directed Account(s) into one or more FDIC-insured depository institutions ("**Sweep Banks**") up to the deposit maximum through the Bank Deposit Program, as defined in the BDP Disclosure Statement, across the Sweep Banks and then into the applicable money market mutual fund (a prospectus for which will be provided to you), as set forth in more detail in the BDP Disclosure Statement, which is available at etrade.com and a copy of which will be sent to you upon your first deposit in the BDP and by which you hereby agree to be bound.

You understand and agree that we may amend the list of Sweep Banks at any time with notice to you. Subject to eligibility requirements, you may block deposits into one or more Sweep Banks in the BDP as set forth in the BDP Disclosure Statement. You further understand and agree that the rate of return on the BDP may be higher or lower than the rate of return on other available cash alternatives. We are not responsible if the BDP has a lower rate of return than other available cash alternatives or causes any tax or other consequences.

You understand and agree that (a) you are responsible for monitoring the total amount of deposits you have at each Sweep Bank to determine the extent of FDIC insurance coverage available to you and (b) Morgan Stanley is not responsible for any insured or uninsured portion of your deposits at any of the Sweep Banks.

You understand and agree that if you are not eligible for the BDP, your Free Credit Balances will be swept into the applicable money market mutual fund as determined by Morgan Stanley. Alternatively, after you have opened your Self-Directed Account, based on your trading activity or otherwise, as determined by us, your Free Credit Balances will be swept into the Cash Balance Program.

You acknowledge and agree that we may, with 30 days' prior written notice to you if required by Applicable Law, (a) make changes to our sweep terms; (b) make changes to the terms and conditions of any available sweep investment; (c) change, add, or remove products available as sweep investment options; and (d) transfer your sweep investment from one sweep product to another. Notwithstanding, we reserve the right to change your participation in the BDP or a money market mutual fund to the Cash Balance Program without notice if we reasonably determine that the change is necessary, such as when your Self-Directed Account is designated as a Pattern Day Trader.

### A. Payment of Interest on Free Credit Balances

You understand and agree that account statements will reflect the payment of any interest on any Free Credit Balance.

Interest paid in the BDP or Cash Balance Program is calculated using the interest rates, calculation methodology, and compounding frequency set by Morgan Stanley, which are subject to change by us from time to time without prior notice. The current simple rates at which interest is paid on Free Credit Balances in the BDP or Cash Balance Program are as specified at etrade.com/rates. The annual percentage yield for any money market mutual fund used for cash sweep can be found in that fund's prospectus.

Morgan Stanley reserves the right to stop paying interest on Free Credit Balances, to remove cash management features, to close your Self-Directed Account, and to take any other action if we, at our discretion, determine that you are maintaining a Free Credit Balance solely for the purpose of receiving interest payments.

### B. Use of Free Credit Balance and Payment of Fees to Others

You understand and agree that any Free Credit Balances in the Cash Balance Program (a) can be maintained in your Self-Directed Account and will earn interest as described above and (b) are held unsegregated and may be used by Morgan Stanley in the conduct of our business, subject to Applicable Law.

You authorize Morgan Stanley, without notice, to withdraw cash or redeem securities maintained in a sweep product to satisfy any Debit Balance; to settle a transaction; to serve as Collateral for a margin loan, Short Sale, or options position; or to satisfy any other indebtedness or Obligations with respect to your Self-Directed Account in an amount sufficient to satisfy any such indebtedness or Obligations. You acknowledge and agree that if you intend to provide funds to settle securities transactions, we must receive such funds at least one Business Day before the Settlement Date to prevent a withdrawal or redemption from a sweep product. You authorize us to act as your agent to purchase and redeem sweep products in connection with the investment of Free Credit Balances under this Self-Directed Account Agreement.

## 8. Maintenance of Collateral

You understand and agree that, as security for the payment of any Obligations owed to Morgan Stanley or our affiliates, you grant Morgan Stanley a first-priority lien on, continuing security interest in, and right of setoff to (a) all Collateral that is held, carried, or maintained now or in the future for any purpose in or through any of your accounts, whether owned individually, jointly, or in the name of another person or entity over which you have authority or in which you have a beneficial interest; and (b) all Collateral, with respect to securities transactions that you enter into with or through Morgan Stanley; that are held by or for Morgan Stanley, Morgan Stanley's agent, or your Authorized Agent; or that are under the direction or control of any exchange or clearing organization through which transactions on your behalf are executed or cleared.

You understand and agree that Morgan Stanley holds Collateral for Morgan Stanley and also as agent and bailee for our affiliates that are secured parties under any agreement with Morgan Stanley or as to which you have any indebtedness or other Obligations, which will include any and all of your Obligations to Morgan Stanley arising at any time and from time to time under or in connection with any and all agreements with Morgan Stanley, including but not limited to Obligations to deliver Collateral or indebtedness.

Except where otherwise required by Applicable Law or where adverse regulatory capital, reserve, or other similar costs ("**Adverse Costs**") would thereby arise, you understand and agree that the security interests of Morgan Stanley in any Collateral shall rank in such order of priority as Morgan Stanley may agree from time to time, provided, however, that Morgan Stanley shall have a first-priority security interest in the Collateral. In the event that Morgan Stanley is obliged by Applicable Law to maintain a first-priority lien, or where Morgan Stanley would suffer Adverse Costs if we did not maintain a first-priority lien, you understand and agree that Morgan Stanley's interest in the applicable Collateral shall have priority to the extent necessary to satisfy the requirements of Applicable Law or to avoid such Adverse Costs.

Notwithstanding anything in this Self-Directed Account Agreement or in the Margin Supplement hereunder to the contrary, if any Collateral serves as security for any extension of credit, loan, or line of credit made by Morgan Stanley Private Bank, National Association or Morgan Stanley Bank, N.A., such security interest and lien granted to Morgan Stanley shall be subordinated to such security interest and lien granted to Morgan Stanley Private Bank, National Association or Morgan Stanley Bank, N.A., as applicable. Any IRA, CESA, or other Retirement Account is not subject to a security interest, lien, or right of setoff for debts owed to us and/or our affiliates in connection with any other account(s) you have with us; however, any such account(s) remains subject to legal remedies for debts and obligations owed in relation to any IRA, CESA, or other Retirement Account.

Subject to the foregoing, you understand and agree that in the event that two or more Morgan Stanley affiliates are so obliged to maintain a first-priority lien, or would suffer Adverse Costs if they did not maintain a first-priority lien, the relevant Morgan Stanley affiliates shall determine among themselves the priority of their respective interests in the relevant Collateral. Notwithstanding anything herein to the contrary, except as otherwise agreed by Morgan Stanley, the security interest of Morgan Stanley in any Collateral consisting of your right, title, or interest in, to, or under this Self-Directed Account Agreement or any other agreement between you and any Morgan Stanley affiliate shall be subject to any enforceable

right of setoff or netting that the Morgan Stanley affiliate that is party to such agreement may have with respect to your Obligations to Morgan Stanley (whether arising under this Self-Directed Account Agreement or any other agreement with Morgan Stanley).

Each Morgan Stanley affiliate that is the "bank" with respect to any "deposit account" constituting Collateral, or to which any Collateral is credited or in which any Collateral is held or carried, agrees with you and each other Morgan Stanley affiliate (each of which so agrees with it) that it will comply with instructions originated by Morgan Stanley directing the disposition of the funds in such deposit account without your further consent.

You hereby consent to the foregoing agreements of the Morgan Stanley affiliates. Each Morgan Stanley affiliate that is the bank with respect to any deposit account represents and warrants that it has not agreed, and that it will not agree, to comply with entitlement orders, directions, or instructions concerning any such account (whether it is your Self-Directed Account or other account) (a) that originated with any person other than Morgan Stanley or (b) until Morgan Stanley shall have given a "notice of sole control" to you. Morgan Stanley hereby notifies each other Morgan Stanley affiliate of its security interest in and the assignment by way of security to it of the Collateral. Morgan Stanley acknowledges such notice from each other affiliate, and Morgan Stanley and you consent to the security interest granted by this Section 8 "Maintenance of Collateral." For the purposes of this Section 8, the terms "entitlement orders," "bank," and "deposit account" shall have the respective meanings given to such terms under the NYUCC.

You authorize Morgan Stanley to register any Collateral in your Self-Directed Account in the name of Morgan Stanley or any other nominee, including sub-custodians, or to cause the Collateral to be registered in the name of, or in the name of any nominee of, a recognized depository clearing organization. Your ownership of the Collateral is reflected in Morgan Stanley's records. Without abrogating any of Morgan Stanley's rights under this Self-Directed Account Agreement, and subject to prior satisfaction of any indebtedness that you may have to Morgan Stanley and/or our affiliates and the payment of any applicable fees detailed in the Fee Schedule, you are entitled to receive physical delivery of any Collateral from your Self-Directed Account capable of being produced and obtained by Morgan Stanley in physical form.

You understand and agree that any Retirement Account, and any assets contributed to such Retirement Account, may be treated as Collateral in some circumstances and may not be treated as Collateral in other circumstances.

### A. Satisfaction of Indebtedness

You understand and agree to satisfy any Obligations to Morgan Stanley and to pay any Debit Balance in any of your Self-Directed Accounts on demand. If you have a Debit Balance in your Self-Directed Account and you own an interest in any other account (including accounts with any Morgan Stanley affiliate), you understand and agree that Morgan Stanley may, to the extent permitted by Applicable Law, effect a transfer or demand a distribution from such other account to cover any Debit Balance due to Morgan Stanley without notice to you. You understand and agree that, on Morgan Stanley's written demand, you will execute all documents necessary to effect a distribution from such other account and to cause such funds to be paid immediately to satisfy your Obligations to Morgan Stanley. You understand and agree that Morgan Stanley's rights under this paragraph are in addition to and with full reservation of Morgan Stanley's rights to take any additional action, including legal action, to recover any Obligations that you may owe to Morgan Stanley.

You understand and agree that owners of a Joint Tenants by the Entirety account will indemnify and hold Morgan Stanley harmless against any claims made by a creditor or other claimant against assets in your Self-Directed Account. In the event of any unsecured account balance or Margin Account or Cash Account deficiency in a Joint Tenants by the Entirety account, each individual agrees that Morgan Stanley may use funds in any of the other individual or joint accounts to offset such unsecured account balance or Margin Account or Cash Account deficiency.

### B. Transfers Between Accounts

You authorize Morgan Stanley to transfer excess funds between your Self-Directed Account and any other accounts held by you at Morgan Stanley and any accounts held by you with any Morgan Stanley affiliate for any reason that does not conflict with Applicable Law, regulation, or rule. At any time at Morgan Stanley's discretion and to the extent permitted by Applicable Law, Morgan Stanley may transfer Collateral from any account in which you have an interest to any other account in which you have an interest, regardless of whether there are other owners on either account, and Morgan Stanley may transfer Collateral between any sub-accounts of the account.

In addition, Morgan Stanley may transfer Collateral from your Self-Directed Account to any commodity, futures, or other account carried by E*TRADE Futures in which you have an interest, to the extent necessary to satisfy any margin call by Morgan Stanley. E*TRADE Futures may transfer Collateral from your Self-Directed Account to any securities or other account carried by Morgan Stanley in which you have an interest, to the extent necessary to satisfy any margin call by E*TRADE Futures.

### C. Liquidation and Remedies

You understand and agree that Morgan Stanley may elect, at our discretion and without notice to you, to make any debt or other Obligation related to your Self-Directed Account immediately due and payable. You further agree that Morgan Stanley may, at our discretion, (a) hold any Collateral in our possession or control until your debts or Obligations owed to Morgan Stanley and/or our affiliates are fully satisfied, (b) apply any such Collateral and/or the proceeds of the liquidation of such Collateral toward the satisfaction of your debts and Obligations owed to Morgan Stanley and/or our affiliates, or (c) hold any such proceeds as cash Collateral until your Obligations owed to Morgan Stanley and/or our affiliates are fully satisfied.

To the extent permitted by Applicable Law, you understand and agree that Morgan Stanley may at any time and without prior notice to you use, liquidate, and/or transfer any or all Collateral to satisfy any Obligations to Morgan Stanley, however such Obligations may have arisen. In the event of a breach or default by you under this Self-Directed Account Agreement, you understand and agree that Morgan Stanley will have the rights and remedies available to a secured creditor under Applicable Law in addition to the rights and remedies provided in this Self-Directed Account Agreement.

You further understand and agree that (a) if you default on any of your Obligations under this Self-Directed Account Agreement, including without limitation failing to make any payment when due hereunder or failure by you to meet margin calls promptly; or (b) if you become bankrupt, insolvent, or subject to a similar condition or subject to any bankruptcy, reorganization, insolvency, receivership, liquidation, or other similar proceeding, any and all Obligations owed to Morgan Stanley shall (to the extent not already due and payable) become immediately due and payable.

In addition, if Morgan Stanley, at our discretion, deems it advisable for our protection, Morgan Stanley may, at any time and without prior notice to you: (a) cancel, terminate, accelerate, liquidate, and/or close out any or all agreements or transactions (including with respect to your open positions in whole or in part)

between you and Morgan Stanley or otherwise relating to your Self-Directed Account and calculate damages in a manner we believe appropriate; (b) pledge, transfer, or sell any Collateral; or (c) take any other action as Morgan Stanley, at our discretion, deems appropriate with respect to any of the foregoing and apply the proceeds to the discharge of the Obligations.

In pursuing the remedies available to Morgan Stanley, you understand and agree that Morgan Stanley may, without limiting our rights under this paragraph, set off (including by setoff, offset, netting, combination of accounts, deduction, counterclaim, retention, and withholding across or within each or all of the securities positions) amounts that you owe to Morgan Stanley against any amounts that Morgan Stanley owes to you, or apply or set off margin posted in favor of you against Morgan Stanley's obligations to you and, in all cases, you will remain liable for any deficiency. In enforcing our rights hereunder, you understand and agree that Morgan Stanley may act at our discretion without regard to any tax or other consequences that you may face as a result of such actions.

### D. Interest Charges on Debit Balances

You understand and agree that you will be charged interest on any Debit Balance in any of your Self-Directed Account(s) and on any and all monies owed by you to Morgan Stanley following liquidation of the Collateral or termination of your Self-Directed Account(s). For additional information regarding interest charges applicable to Debit Balances in Margin Accounts, visit https://us.etrade.com/what-we-offer/pricing-and-rates.

### E. Non-Transferable Securities

If Morgan Stanley becomes aware that transfer agent services are no longer available for any security in your Self-Directed Account(s), Morgan Stanley reserves the right to remove such security from your Self-Directed Account(s). Morgan Stanley will issue you a receipt in lieu of a physical certificate as evidence of your ownership of that security. If at any time after the issuance of such receipt, Morgan Stanley becomes aware that transfer agent services have been reinstated, we will make reasonable efforts to have the security restored to your Self-Directed Account(s), provided your Self-Directed Account(s) has not been closed. In the event that your Self-Directed Account(s) has been closed, we will send a letter to the last mailing address we have on file for you, requesting instructions from you as to the disposition of such security. If we do not receive a timely response, the security will be considered unclaimed property and will be escheated to the state of your last known address in accordance with Applicable Law. After the escheatment of any such security, you will need to contact that state to claim that security.

### F. Transfer of Accounts

When you transfer Collateral from your Self-Directed Account to an account with another custodian, or when you transfer assets from your account with another custodian to Morgan Stanley, you understand and agree that you are required to submit to Morgan Stanley an account transfer form in the format that we provide.

By submitting an outgoing account transfer request, you authorize Morgan Stanley to act on your behalf to initiate a transfer of the Collateral in your Self-Directed Account to an account that you have established with another custodian. Once Morgan Stanley receives an outgoing transfer request in good order, we will review the request and submit the transfer instructions to the other custodian, which is then responsible to

facilitate delivery and receipt of the Collateral subject to the transfer request. You understand and agree that Morgan Stanley may, under certain circumstances, reject the transfer request before or after initiation and that you will be notified of any such rejection.

When you contact the delivering or receiving custodian directly, you acknowledge and agree that they are responsible for ensuring that such transfer is initiated properly and that the delivering or receiving custodian provides instructions to Morgan Stanley in exactly the format that we require to properly identify you and your Self-Directed Account(s) for transaction posting. You understand and agree that any erroneous, mismatched, or incomplete identifying information on an incoming or outgoing transfer request may result in such transfer's being rejected, lost, posted to an incorrect account, or returned to the originating firm without notice to you.

Unless otherwise indicated on Morgan Stanley's account transfer form, you authorize Morgan Stanley to liquidate any positions in "nontransferable securities" (as described above), set off against any Debit Balance, and transfer the resulting balance. You understand and agree that after receiving a transfer request, Morgan Stanley will cancel, or will instruct the delivering firm to cancel, all open orders for your Self-Directed Account and to fulfill the transfer request as needed.

## 9. Communicating with You and Other Information Pertaining to Your Self-Directed Account

### A. Account Statements and Transaction Confirmations

You understand and agree that you are responsible for reviewing your account statements and transaction confirmations immediately on receipt, whether delivered to you electronically, by interactive voice response, by postal mail, or otherwise. You agree that your account statements and transaction confirmations shall conclusively be deemed accurate and that the underlying transactions are authorized by and binding on you unless you notify Morgan Stanley otherwise, as described below.

You will be sent a monthly account statement unless there are no transfers or transactions in your Self-Directed Account during a particular month. To the extent your Self-Directed Account has any Collateral in it, you will be sent an account statement at least quarterly. You understand and agree that to the extent your Self-Directed Account has no security positions, money balances, or account activity in a given quarter, you will not receive an account statement for that corresponding quarter. You agree to review all account statements and to notify us within 10 Business Days of receipt of any account statement that you believe contains any error or unauthorized transaction or transfer, unless the error or unauthorized activity is reported on a transaction confirmation, which is subject to the notification time period noted below.

For transaction confirmations, you understand and agree to notify Morgan Stanley of any objection to the terms of a confirmation within two Business Days after receipt of the confirmation. In all cases, we reserve the right to determine the validity of your objection. If you object to a transaction for any reason, you agree that you will attempt to limit any Losses that may result from such transaction. You understand and agree that unless you take such action to limit Losses, you will bear sole responsibility for any and all further Losses that may occur thereafter, even if your objection to the initial transaction is ultimately determined to be valid.

You agree that we are not obligated to provide you with any trade status report other than the official transaction confirmation. Morgan Stanley may nevertheless provide electronic or other trade status reports as a courtesy only, but we do not guarantee the accuracy or timeliness of such interim trade status reports,

and neither Morgan Stanley nor our affiliates are liable for any Losses arising out of or relating to delayed issuance or failure to issue an electronic or other trade status report or from errors in such reports that are subsequently corrected by Morgan Stanley in official transaction confirmations. We will keep on file for you certain addresses, including the mailing address and email address that you provide, which we will use to send you written communications.

We will consider any communication delivered to any of your addresses as delivered to you personally. You must notify us immediately of any change to any of your addresses, including but not limited to a change of residence outside the United States, which may limit Morgan Stanley's ability to continue offering the Service or certain products offered through, or features of, the Service under applicable U.S. tax law and foreign law or by policy. If Morgan Stanley becomes aware of a change to your mailing address through notification from the U.S. Postal Service, we may update our records accordingly, provided, however, that Morgan Stanley has no obligation to update your mailing address unless you personally notify us of an address change. If your mailing address changes and neither you nor the U.S. Postal Service notifies Morgan Stanley of such change, we will continue to send your account mailings, which contain your personal and financial information, to the mailing address we have on file for you if you have not agreed to eDelivery (as described below).

### B. Entering Trades, Trade Settlement, and Cancelations

You understand and agree that Morgan Stanley is not responsible for any errors in submission or transmission of orders by you or your Authorized Agent and may execute any order on the terms of such order as actually received by us. You are responsible for the settlement of all transactions resulting from executions of orders (including partial executions) regardless of (a) any delay in transmission or receipt of a transaction confirmation or execution report and (b) whether you received an electronic acknowledgment of the order executed by us.

You understand and agree that when you place a request to cancel an order, the cancelation of that order is not guaranteed. The order will be canceled only if the request is received by the market center where the order was routed and matched with the order to be canceled before it is executed. You understand and agree that mere submission of a cancelation request prior to receipt of notice of an execution does not ensure that an order will not be executed. In addition, any reporting or posting errors, including errors in reporting or posting execution prices and confirmations of cancelations, will be corrected to reflect the actual market center execution and the related settlement obligation.

You understand and agree that you are responsible for knowing the status of your pending orders before entering additional orders. Any duplication by you of a pending order will be considered authorized and intended by you, even if the execution of the order exceeds your available funds, purchasing power, or available position.

### C. Obvious Error; Trade Nullification and Adjustment

You understand and agree that a transaction may be nullified or adjusted under Applicable Law or the rules or agreements of a market center if the transaction or its execution was the result of an “obvious” or “catastrophic” error. In addition, Morgan Stanley reserves the right to adjust, cancel, correct, or take any other appropriate action when, at our reasonably exercised, good-faith discretion, we deem a transaction to be erroneous in nature, even if such transaction would not be required to be or subject to nullification or adjustment pursuant to Applicable Law or the rules or agreements of a market center.

Unless required under Applicable Law, you understand and agree that Morgan Stanley has no obligation to nullify or adjust any transaction executed in accordance with your instructions. You, however, may request a review of a transaction that results from an obvious or catastrophic error by promptly contacting Customer Service at 800-387-2331 or your designated representative. We will use reasonable efforts to request nullification or adjustment of a transaction deemed to have been executed in error through the market centers. You understand and agree that trade nullification or adjustment requests submitted more than 15 minutes after execution generally cannot be acted on by Morgan Stanley or the market centers. We reserve the right to deny any trade nullification or adjustment request.

### D. Information Made Available Through the Service

You understand and agree to use the Service for lawful purposes, for personal and non-commercial use, and as permitted by this Self-Directed Account Agreement. You understand and agree that you are permitted to store, display, analyze, modify, reformat, and print the information made available to you through the Service only for your own use. You agree to not transmit through etrade.com any material that violates or infringes in any way on the rights of others or that would encourage conduct that may give rise to civil or criminal liability.

You agree to not modify, copy, publish, transmit, license, participate in the transfer or sale of, reproduce, create derivative works from, distribute, redistribute, display, or in any way exploit the Service. You agree to not upload, post, decompile, reverse-engineer, disassemble, modify, copy, distribute, transmit, reproduce, republish, license, display, sell or transfer, or create derivative products from the Service. You understand and agree that software accessed on the E*TRADE from Morgan Stanley website(s) is subject to U.S. export controls and may not be downloaded by any person prohibited from doing so by Applicable Law.

You agree to not publish, transmit, or otherwise reproduce this information, in whole or in part, in any format to any third party without the express written consent of Morgan Stanley. You agree to not use, alter, obscure, or remove any copyright, trademark, or other notices that are provided to you in connection with the information. You represent and warrant that (a) you will not use the Service in contravention of this Self-Directed Account Agreement, (b) you will use the Service only for the benefit of your Self-Directed Account and not on behalf of any other person, and (c) with the exception of a web browser and other applications specifically approved by Morgan Stanley in writing, you will not use (or allow another person to use) any software, program, application, or other device, directly or indirectly, to access or obtain information through the Service or to automate the process of accessing or obtaining such information.

## 10. Trading Provisions

### A. Settlement of Transactions

You understand and agree to pay for all Collateral purchased for your Self-Directed Account and to deliver Collateral sold for your Self-Directed Account in Good Deliverable Form by the Settlement Date or, in the event your Self-Directed Account is a Margin Account, on demand by Morgan Stanley. In the case of a sale of Collateral, we are authorized to borrow or otherwise obtain the Collateral as necessary to enable us to make delivery or guarantee such delivery, and you understand and agree that you are liable for any fees listed on the Fee Schedule for failure to deliver the Collateral by the Settlement Date.

### B. Order Handling; Order Review and Restrictions

You understand and agree that certain orders may, at Morgan Stanley's discretion, be subject to manual review, which may cause delays in the execution of your orders or cause your orders to be executed at prices that are significantly different from the quotes provided to you at order entry. You understand and agree that you authorize Morgan Stanley to submit your orders jointly with other orders for other clients, and you understand and agree that the average price for executions resulting from such bunched orders will be assigned to your Self-Directed Account.

To prevent unintended Short Sales, once a long sell order is placed with respect to a position in your Self-Directed Account, we generally do not allow the placement of another sell order marked long for those same securities until the first order is confirmed to have been canceled. For our protection against credit risk and other conditions, we may, without prior notice, decline, reject, cancel, or reverse your order(s) and may place trading, disbursement, and other restrictions on your Self-Directed Account.

You understand and agree that Morgan Stanley may make changes to order-routing parameters and impose certain trading restrictions during times of high volatility, low liquidity, or other special or extreme market conditions. These changes and restrictions may be in response to a market center's request or due to capacity balancing, destination availability, or other factors affecting Morgan Stanley or our market centers. In such situations, so that clients receive fair pricing and preserve continued execution of orders in prevailing market conditions, we will determine at our discretion whether market conditions warrant any additional measures or restrictions and act accordingly, including taking one or more of the following actions:

- Reallocating order flow in specific securities or certain security types to or from a market center
- Restricting trading in certain security types or specific securities
- Restricting the use of certain order types or order strategies
- Canceling orders or certain types of orders (e.g., Short Sales)
- Increasing margin requirements for certain orders or order types or on certain types of securities or a specific security
- Posting an "Extreme Market Conditions Notice" to our platforms

You understand and agree that Morgan Stanley may determine to take such action to protect (a) either our clients or Morgan Stanley or (b) both our clients and Morgan Stanley at any time, with or without notice, and that execution delays and/or executions at prices significantly different from the quoted price displayed at order entry may be more likely to occur under such circumstances.

You understand that Morgan Stanley will comply with economic sanctions administered by the U.S. Treasury's Office of Foreign Assets Control ("**OFAC**") and OFAC's List of Specially Designated Nationals and Blocked Persons. You understand and agree that Morgan Stanley may restrict your ability to enter orders or otherwise transact in your Self-Directed Account, which includes certain securities and contracts that you hold in your Self-Directed Account, in order to comply with regulatory restrictions, trading halts, government sanctions, and government orders. You agree to hold Morgan Stanley harmless from, and indemnify Morgan Stanley against, any losses, causes of action, damages, or expenses (including attorney fees) arising from, or as the result of, Morgan Stanley's following the instructions of any U.S. or foreign

government entity to seize, freeze, or otherwise cause Morgan Stanley to suspend the Service, or any aspect of the Service, or to restrict transactions or elections in, or assert control over, any Self-Directed Account, which includes any of the securities, contracts, assets, or funds in such Self-Directed Account.

### C. Order Types

You understand and agree that the order types and the terms of each such order type offered by Morgan Stanley as part of the Service may vary in certain cases from those of other broker-dealers. You understand and agree to review and become familiar with the terms of all orders made available as part of the Service prior to use. A detailed description of the terms of all orders is available at us.etrade.com/e/t/prospectestation/help?id=1301020000.

You understand and agree that Morgan Stanley reserves the right to modify, without prior notice, the Service at any time, including the terms of any order types offered as part of the Service, to comply with regulatory obligations or to protect Morgan Stanley and/or our clients from fraud, risk, or other conditions, including but not limited to high volatility, low liquidity, and other special or extreme market conditions. Morgan Stanley may impose certain trading restrictions during times of volatile or extreme market conditions or activity, including by restricting trading in certain security types or specific securities, restricting the use of certain order types or order strategies, canceling certain types of existing orders, and/or increasing margin requirements for certain specific securities or accounts. Morgan Stanley may determine to take such action to protect (a) either our clients or Morgan Stanley or (b) both our clients and Morgan Stanley at any time. You understand and agree that you are solely responsible for ensuring that you remain familiar with the terms of any order types prior to placing such orders.

Without limiting the foregoing, you understand and agree that:

i. Whether you place a market order or a limit order, you receive the price at which the order is executed in the marketplace, which, particularly during periods of high volume, illiquidity, fast movement, or volatility in the marketplace, may differ from the quoted market price at the time you submitted your order.

ii. “Firm” price quotes are for only the size specified; you may receive multiple executions or partial executions, including at prices worse than the quoted market price at the time you submit your order if your order is in excess of the quoted size or other orders are received by the market center at the same time or ahead of your order.

iii. Limit orders may not be executed in full at any particular time or at all if there is not sufficient liquidity offered at or better than the limit price specified by you.

iv. Securities may open for trading at prices substantially higher or lower than the previous closing price.

v. Morgan Stanley may cancel orders designated “good until canceled” after 60 days and prior to certain corporate actions that would require adjustment of the order in accordance with Applicable Law, but in no event shall Morgan Stanley be required to cancel any such orders, and Morgan Stanley may, at our discretion, adjust such orders in accordance with Applicable Law.

### D. Transactions in Over-the-Counter Equity Securities

You understand and agree that trading in over-the-counter ("**OTC**") equity securities carries a high degree of risk and may not be appropriate for everyone. You understand and agree that OTC equity securities present trading risks as they are generally "thinly traded" or more illiquid than exchange-listed securities, which tend to increase price volatility and impair your ability to buy or sell within a reasonable period of time without adversely affecting execution price(s). As a self-directed trader, you assume full responsibility for each and every transaction in or for your Self-Directed Account and for your trading decisions, including with respect to any transactions in OTC equity securities.

To the extent that you participate in any OTC equity security transaction, you understand and agree that OTC equity securities may be subject to different trading rules and systems than other securities and that OTC equity securities may encounter significant delays in executions, reports of executions, and updating of quotations. Morgan Stanley may, at our discretion, require that you place limit orders to trade certain OTC equity securities, and we reserve the right to reject any order.

Although Market Data relating to OTC equity securities may be updated from time to time, you understand and agree that displayed pricing information and other Market Data relating to OTC equity securities—including but not limited to OTC equity securities traded on the OTCQX, OTCQB, Pink Markets, and Expert Markets; Pink Sheet quoted securities; and OTC equity securities classified as "Penny Stock," "Expert Market," or "Grey Market" securities—may not be available or current at any given point in time. In some cases, certain OTC equity securities may not trade for extended periods of time. Accordingly, you understand and agree that last-sale information may not reflect a recent transaction price because time has elapsed or current interest in the market has changed, which may result in your order executing at prices significantly different from the displayed last-sale price.

You understand and agree that under certain circumstances OTC equity securities may not be registered with the SEC and therefore are not subject to the same reporting, disclosure, and regulatory oversight requirements that apply to SEC-registered securities. You understand and agree that in some cases issuers of OTC equity securities may have no obligation to provide information to investors, and in many cases reliable information regarding issuers of OTC equity securities, their prospects, or the risks associated with the business of such issuers may not be available. As a result, it may be difficult to properly value an investment in an OTC equity security. Accordingly, you understand and agree to exercise additional care and to perform thorough due diligence before transacting in OTC equity securities.

You acknowledge and agree to proceed with caution and to thoroughly research companies before transacting in OTC equity securities. You understand and agree that certain OTC equity securities transactions may involve companies that are not able or willing to provide current disclosure to the public markets, including companies that have ceased operations, as well as "dark" companies with unknown management practices and market disclosure policies. Publicly traded companies that are not willing to provide information to investors should be treated with suspicion, and their securities should be considered highly risky.

You understand and agree that other OTC equity securities transactions may involve companies that are under investigation for or have previously engaged in misleading or manipulative stock promotion, disruptive corporate activities, and potentially fraudulent acts. As a self-directed trader, you acknowledge and agree that you, and not Morgan Stanley, are solely and exclusively responsible for each and every transaction in or for your Self-Directed Account and for your trading decisions, including with respect to

transactions in OTC equity securities. You further acknowledge and agree that Morgan Stanley is under no requirement to make any OTC equity securities available to trade and, in some instances, may be prohibited by Applicable Law from displaying quotations in certain OTC equity securities.

### E. Free-Riding

You understand and agree that transactions in violation of the Cash Account provisions of Regulation T of the Federal Reserve Board that generate a profit in your Self-Directed Account are, to the extent permitted by Applicable Law, forfeited to Morgan Stanley. You further understand and agree that Losses in connection with transactions that violate the Cash Account provisions of Regulation T of the Federal Reserve Board remain your responsibility. Morgan Stanley has the right to terminate the Self-Directed Account if persistent free-riding occurs.

### F. No Recommendation of Day Trading

You understand and agree that while providing the means to place trades electronically, Morgan Stanley does not recommend or endorse what is commonly referred to as "day trading," that is, the practice of purchasing and selling (or selling and purchasing) the same security within the same trading day. You understand and agree that engaging in day trading is extremely risky and is not appropriate for clients with limited resources, limited investment or trading experience, or a low risk tolerance.

### G. Corporate Actions

You understand and agree that certain securities may impart valuable rights that expire unless you take some action and that you are responsible for knowing the rights and terms of all securities in your Self-Directed Account. You understand and agree that Morgan Stanley is not obligated to notify you of any upcoming expiration, redemption, or other corporate action event dates or to take any other action on your behalf without specific instructions from you, except as required by Applicable Law. You understand and agree, however, that if any such right is about to expire, become worthless, or be redeemed for significantly less than its fair market value without your having provided timely instructions to Morgan Stanley, we may, at our discretion, take action on your behalf and credit your Self-Directed Account with the proceeds. Although Morgan Stanley has the discretion to take such action, we are not obligated to do so. You agree to not hold Morgan Stanley liable for any Losses or expiration of rights arising out of or relating to your failure to act or to give instructions to Morgan Stanley to act on your behalf.

You understand and agree that you are responsible for knowing about voluntary and mandatory corporate action events related to securities that you hold in your Self-Directed Account, including but not limited to mergers, name changes, stock splits, reverse stock splits, tender offers, and redemptions. While Morgan Stanley may provide you with information regarding such corporate actions on its platforms, Morgan Stanley is not obligated to notify you of any such corporate actions before they occur. You understand and agree that Morgan Stanley will not allocate securities or funds resulting from corporate actions until such securities or funds are received by us from the paying agent or depository.

On voluntary reorganization instructions (tender or exchange offers), you agree to provide instructions to Morgan Stanley's Corporate Actions Department no later than two Business Days prior to the expiration of the offer, to allow us sufficient time to act on your instructions. You understand and agree that any instructions received after that time are processed on a "reasonable efforts" basis only. You agree that any shares you elect to tender pursuant to a corporate action must be held in your Self-Directed Account(s) at expiration of the election deadline. Elections on shares that are no longer held in your Self-Directed

Account(s) as of the election deadline will either be adjusted or canceled at Morgan Stanley's sole discretion. To the extent that you elect to tender fewer than a "round lot" number of shares (generally 100 shares or more) in a voluntary corporate action to which special odd lot provisions apply that prohibit beneficial owners of a number of shares equivalent to a round lot or more from tendering fewer than a round lot number of shares, you understand and agree that you are not the beneficial holder of a round lot number of shares or more, including in aggregate across any and all of your accounts held at or by any broker-dealer, transfer agent, or other custodial institution, including in any other accounts held at Morgan Stanley, and that you have otherwise complied with the odd lot requirements specified in the terms of the offer. You also agree that you are responsible for knowing about periodic payment activities, including cash, stock, and optional dividends, and that we are not obligated to notify you of any such activities.

You understand and agree that you are responsible for knowing when a corporate action, such as a reorganization, merger, or stock split, has changed the symbol and/or the number of shares represented by an options contract. If you trade options during a tender offer, merger, or other pending reorganization, you understand and agree that you should exercise particular care to ensure that you understand the price of the options, the number of shares per contract, and the terms on which options contracts will adjust for such corporate actions. If due to a reorganization you sell more shares of a security than you own and you are uncovered on an options position, or you are otherwise exposed to risk requiring Morgan Stanley to take market action in your Self-Directed Account, you agree that you are responsible for any Losses incurred. You further acknowledge that overselling in a Cash Account or Margin Account is an impermissible Short Sale and may result in restricting your Self-Directed Account.

You understand and agree that certain corporate actions, including without limitation bankruptcies, mergers, reorganizations, and dividend payments, may be subject to court review, changes, and delays. You agree to not hold Morgan Stanley liable for following court instructions or for reversals or delays related to certain corporate actions. Similarly, you understand and agree that transactions in foreign American Depository Receipts may also be subject to changes and delays, and you agree to not hold Morgan Stanley liable for such changes or delays.

### H. Securities Subject to Restrictions

You acknowledge that various laws, rules, regulations, and policies may be applicable to the securities in your Self-Directed Account and to transactions relating to those securities. You understand and agree to notify Morgan Stanley prior to depositing in your Self-Directed Account, or selling for your Self-Directed Account, any Control Securities or Restricted Securities. You further agree to notify Morgan Stanley if you become an affiliate of an issuer for purposes of Rule 144 under the Securities Act. You acknowledge that you are obligated to notify us of any other restrictions on the sale of Collateral, including restrictions imposed by the issuer or any other third party, prior to depositing the securities in your Self-Directed Account or placing an order in connection with the sale or transfer of such securities. You agree to furnish us with the necessary documents (including opinions of legal counsel, if requested) to clear legal transfer in connection with any deposit or sale of such securities. You further agree that we process the removal of restrictive legends on a best-efforts basis only. You agree to not hold Morgan Stanley liable for the loss of market value in Control Securities or Restricted Securities while the removal process is pending.

If you sell stock that is later found to be nontransferable, you understand and agree that you are responsible for all costs associated with processing the security, including the cost to repurchase stock. Morgan Stanley may, at our discretion, require that securities not be sold or transferred until they first clear legal transfer.

You acknowledge that if you are an employee, affiliate, or other insider of the issuer of a security, any transactions in that security may be governed by the insider trading policy of the issuer of that security, and you agree to comply with such policy and all Applicable Law, regulations, and rules, including but not limited to those pertaining to insider trading. By transacting in a security in your Self-Directed Account, you represent that you are not aware of any material nonpublic information about the security or the issuer of the security. You acknowledge and agree that you are responsible for compliance with all laws, rules, regulations, policies, and restrictions that may be applicable to the securities in your Self-Directed Account, including all reporting Obligations with regard to the purchase or sale of any securities, including filings in accordance with Rule 144 under the Securities Act or Section 13 or 16 of the Exchange Act.

You understand and agree that proceeds from the sale of Control Securities or Restricted Securities may not be made available to you for withdrawal or reinvestment until we receive securities from the transfer agent in Good Deliverable Form. You understand that even if the necessary documents are furnished in a timely manner, there may be delays in processing such securities. You further agree that we are not liable for delays in the sale or settlement of such securities, or the release of proceeds from such sale, resulting from any delay or failure to receive securities in Good Deliverable Form from you, the issuer, or its agents.

## 11. Trading System

You understand and agree that Morgan Stanley does not guarantee uninterrupted access to the Service or any feature of the Service. You understand and agree that from time to time certain methods of accessing your Self-Directed Account may be temporarily unavailable and that Morgan Stanley does not guarantee the availability of the Service, any feature of the Service, or broker-assisted functions, including but not limited to your ability to place order, exercise, or other account instructions with a broker via telephone or other means of communication. You understand and agree that Morgan Stanley reserves the right to suspend access to the Service without prior notice during scheduled or unscheduled system repairs or upgrades and to modify the Service at any time without prior notice.

### A. Alternative Access to the Service

Morgan Stanley offers a variety of ways to access your Self-Directed Account, including telephone, online, mobile application, and interactive voice response services. You understand and agree that if you experience any difficulties accessing the Service through any one of the Access Means, particularly during periods of heavy trading and volatile market conditions, you will attempt to use alternate methods to access the Service. You understand and agree that Morgan Stanley will not accept orders or instructions via email, facsimile, or postal mail (including U.S. mail and overnight delivery).

### B. Client Responsibility

The Customer Protection Guarantee is our pledge to protect clients from losses due to unauthorized activity that takes place in your Self-Directed Account(s) through no fault of your own.

However, you understand and agree that you are responsible for all acts and omissions relating to the use of the Service, including all the orders that you or an Authorized Agent enter through the Service using the Access Means. You understand and agree that you are responsible for maintaining the confidentiality of the Access Means.

You understand and agree that you need to take measures to protect and keep your Access Means and account information confidential, and to notify us immediately if you suspect or become aware of unauthorized activity in your account(s) or that Access Means or account information may be compromised.

You understand and agree that the Customer Protection Guarantee only covers activity that is not authorized by you. If you share your Access Means or account information with anyone, we will consider their activities to have been authorized by you, including activities by persons to whom you have intentionally or unintentionally, directly or indirectly granted authority over your Self-Directed Account(s).

You understand and agree to notify us immediately if: (a) an order is placed through the Service and you do not receive an order number; (b) an order is placed through the Service and you do not receive an accurate acknowledgment of the order; (c) you receive acknowledgment of the execution of an order that you did not place or you receive an acknowledgment of an inaccurate execution; or (d) you become aware of unauthorized use of your Access Means. You understand and agree that if you fail to notify us as soon as practicable when any of the above conditions occur, Morgan Stanley will not be liable to you for any resulting losses.

We may ask for your cooperation with any investigation we undertake regarding any claim you file pursuant to the Customer Protection Guarantee. Such cooperation may require you to take additional steps to assist us, including but not limited to measures to detect and/or sanitize your personal computer(s) and/or device(s), file a police report or other reports with governmental authorities, provide an affidavit regarding the unauthorized activity in the Self-Directed Account(s), aid in the recovery of any losses in the Self-Directed Account(s), and sign a release or other legal documents before restoring your Self-Directed Account(s). You understand and agree that nothing in this Customer Protection Guarantee is intended to limit any right conferred or claim or protection provided to any party under Federal Law (such as Regulation E) or state law, as applicable.

### C. Market Data

You understand and agree that your receipt of Market Data or research does not constitute a recommendation or solicitation by Morgan Stanley for the purchase or sale of any securities described therein.

You understand and agree that neither Morgan Stanley nor any participating Data Provider guarantees or makes any warranty of any kind, express or implied, regarding the timeliness, sequence, accuracy, or completeness of Market Data.

You understand and agree that neither Morgan Stanley nor a Data Provider will be liable for any Losses arising out of or relating to any (a) inaccuracy, defect, or omission in Market Data; (b) error or delay in the transmission of Market Data; or (c) interruption in any Market Data service due to any cause beyond our control.

You understand and agree that each Data Provider asserts a proprietary interest in all the Market Data it furnishes. You understand and agree to use Market Data (including real-time quotes) only for your individual nonbusiness use. You understand and agree that you will not provide or redistribute Market Data to any third party or entity. You understand and agree that Data Providers may enforce the terms of this Self-Directed Account Agreement directly against you.

You further understand and agree that Morgan Stanley may, at any time and for any reason, without notice, to the extent permissible under relevant rules and/or regulations, (i) terminate or otherwise restrict your access to any or all Market Data services provided by the Data Providers for nonpayment of fees or other reasons, including access to real-time and/or consolidated Securities Information Processor data services; and/or (ii) require that you purge any or all Market Data provided by the Data Providers.

You understand and agree that unless otherwise noted, news, commentary, and research reports provided to you as part of the Service are from third-party sources unaffiliated with Morgan Stanley and are for informational purposes only. Unless otherwise noted, we do not endorse or adopt as part of the Service any third-party content provided to you, and you agree and understand that Morgan Stanley is not liable for any claims relating to your consumption of such content.

### D. Research Disclosure

You understand and agree that the research reports and the information derived from such reports that are included on etrade.com are provided for informational purposes only and that such content is not a solicitation of an offer to buy or sell any security or other financial instrument or to participate in any trading strategy. You understand and agree that the content on etrade.com includes independent third-party research reports on the securities of Morgan Stanley and that making such research reports available is not a solicitation of Morgan Stanley securities. You understand and agree that the third-party research providers' views on Morgan Stanley securities do not influence our choice of third-party research providers.

You understand and agree that the research reports are not individually tailored investment advice and that they are prepared and made available without regard to your individual financial circumstances and objectives. You understand and agree that the securities and strategies discussed or referred to in the research reports may not be appropriate for you and that your decision to buy, hold, or sell a security should depend on your individual circumstances (such as your investment objectives and experience, time horizon, liquidity needs, financial situation, and existing holdings) and other considerations.

## 12. Arbitration Agreement and Disclosures

**This Self-Directed Account Agreement contains a predispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:**

- **All parties to this Self-Directed Account Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
- **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**
- **The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.**
- **The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**
- **The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the**

securities industry.

- **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**
- **The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Self-Directed Account Agreement.**

**You agree that all claims or controversies, whether such claims or controversies arose prior to, on, or subsequent to the date hereof, between you and Morgan Stanley and/or any of our present or former officers, directors, or employees concerning or arising from (a) any Self-Directed Account maintained by you with Morgan Stanley individually or jointly with others in any capacity; (b) any transaction involving Morgan Stanley or any predecessor or successor firms by merger, acquisition, or other business combination and you, whether or not such transaction occurred in such Self-Directed Account(s); or (c) the construction, performance, or breach of this or any other agreement between you and Morgan Stanley, any duty arising from the business of Morgan Stanley or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which Morgan Stanley is a member.**

**You may elect which of these arbitration forums shall hear the matter by sending a registered letter or other written communication to:**

**E*TRADE from Morgan Stanley**
**Attn: Legal and Compliance Division**
**1633 Broadway, 30th Floor**
**New York, NY 10019**

**If you fail to make such election before the expiration of five days after receipt of a written request from Morgan Stanley to make such election, Morgan Stanley shall have the right to choose the forum.**

**No person shall bring a putative or certified class action to arbitration nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (a) the class certification is denied, (b) the class is decertified, or (c) the person is excluded from the class by the court.**

**Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Self-Directed Account Agreement except to the extent stated herein.**

**The statute of limitations applicable to any claim, whether brought in arbitration or in a court of competent jurisdiction, shall be that which would be applied by the courts in the state in which you reside. If you do not reside in the United States, the statute of limitations shall be that which would be applied by the courts in the state where the Morgan Stanley office servicing your Self-Directed Account is located.**

## 13. Mutual Fund and Exchange-Traded Fund Trading

By virtue of investing in mutual funds and Exchange-Traded Funds ("**ETFs**") with Morgan Stanley, you understand and agree to the following.

i. Morgan Stanley does not offer mutual funds or share classes that are necessarily the least expensive, and we may offer multiple share classes of the same fund with varying cost structures. In addition, other mutual funds and share classes that we do not make available (and that may be available through other firms) may have lower charges, fees, and/or expenses. By making mutual funds and ETFs available to you for unsolicited trades, we do not make any representation of the appropriateness of any mutual fund, mutual fund share class, or ETF, and we make no recommendation of any kind.

ii. Where applicable and with prior written notice to you, you hereby authorize us to instruct any mutual fund company to convert, at no cost to you, any open-end mutual fund positions in your Self-Directed Account(s) to a share class of the same fund that has the same or a lower shareholder services fee pursuant to Rule 12b-1 under the Investment Company Act of 1940, as amended, to the extent available, according to any applicable share class conversion program.

### A. Share Class Selection

You understand that the key distinctions among share classes are the sales charges and ongoing expenses, including 12b-1 fees, if any, you will pay in connection with your investment in the fund. We offer you thousands of either load-waived mutual funds or no transaction fee funds. When deciding which share class makes the most economic sense for you, you understand and agree that you should consider a number of factors, including:

- Whether the share class is available on our platform. Not all share classes of a given fund may be available or may only be available depending on account type;
- What the fund's expenses are and whether they are subject to ongoing 12b-1 and other fees over the course of your investment. In general, funds with higher costs will decrease the return on your investment versus lower cost share classes, such as those that are not subject to 12b-1 fees; and
- Whether you are eligible for an available share class. For example, some institutional share classes have very high minimum investment thresholds.

## 14. Limitation of Liability

To the maximum extent permitted by Applicable Law, no Indemnified Parties shall be liable for any action taken or not taken by any of them hereunder or in connection herewith except for their breach of this Self-Directed Account Agreement, gross negligence, or willful misconduct. No Indemnified Parties shall be liable for any actions taken or not taken in accordance with any instruction from you or your agents, including any Authorized Agent. The Indemnified Parties may consult legal counsel, and any action taken or suffered in good faith in accordance with the advice of such counsel shall be full justification and protection for the Indemnified Parties.

### A. No Liability for Indirect, Consequential, or Special Damages; Force Majeure Events

In no event shall any Indemnified Parties be held liable for (a) indirect, consequential, or special damages or (b) any loss of any kind caused, directly or indirectly, by any Force Majeure Event, and you unconditionally waive any right you may have to claim or recover such damages, even if you have informed an Indemnified Party of the possibility or likelihood of such damages.

### B. Automated Systems

You consent to Morgan Stanley's and our affiliates' use of automated systems or service bureaus in conjunction with (a) the receipt and handling of orders; (b) the reporting of order acknowledgments, cancelations, and executions; (c) the clearing and settlement of transactions for your Self-Directed Account; (d) tax and cost basis reporting; (e) the delivery of issuer information with respect to Collateral; and (f) similar recordkeeping and reporting services and account reconciliation and risk management (collectively "**Automated Systems**"). You understand and agree that the use of Automated Systems entails risks, including but not limited to interruption of service, systems or communications failures, delays in service, cyberattacks, and errors in the design or functionality of such Automated Systems (collectively a "**System Failure**") that could cause substantial damage, expense, or liability to you.

THE INDEMNIFIED PARTIES MAKE NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE SELECTION, DESIGN, SECURITY, FUNCTIONALITY, OPERATION, TITLE, OR NONINFRINGEMENT OF ANY AUTOMATED SYSTEM. THE INDEMNIFIED PARTIES MAKE NO EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTY WITH RESPECT THERETO. WITHOUT LIMITING THE FOREGOING, THE INDEMNIFIED PARTIES EXPRESSLY DISCLAIM ANY REPRESENTATION THAT ANY AUTOMATED SYSTEM WILL OPERATE UNINTERRUPTED OR BE ERROR-FREE.

### C. Other Third Parties

The Indemnified Parties shall have no responsibility or liability to you (a) in connection with the performance or nonperformance of any market center, clearinghouse, clearing firm, or other third party (including banks) of its obligations with respect to any order for, transaction in, or Collateral for your Self-Directed Account; (b) in connection with any instructions, notices, and communications that the Indemnified Parties believe to be from an individual authorized to act on your behalf; (c) as a result of any action taken by or on behalf of an Indemnified Party or such party's failure to act, if such action or inaction is necessary to comply with Applicable Law, or (d) any action taken or not taken by an Authorized Agent or agent thereof.

### D. Where Limited by Applicable Law

Because some states prohibit the limitation of liability for consequential or incidental damages, in such states the limitation of liability only with respect to consequential or incidental damages may not apply, and the respective liabilities of the Indemnified Parties are limited to the greatest extent allowable under Applicable Law in those states. In the event that a court or arbitration panel, as the case may be, holds that the limitations of liabilities or remedies available as set forth in this Self-Directed Account Agreement, or any portions thereof, are unenforceable for any reason, or that any of your remedies under this Self-Directed Account Agreement fail, you expressly agree that under no circumstances will the total, aggregate liability of the Indemnified Parties to you or any party claiming by or through you, for any cause whatsoever, exceed $1,000, regardless of the form of action and whether in contract, statute, tort, or otherwise.

## 15. Indemnification

You agree to fully indemnify, hold harmless, and reimburse the Indemnified Parties, through the date of demand, from and against any and all Losses arising out of or relating to:

i. any transaction effected for or in your Self-Directed Account in accordance with any communication, notice, instruction, or order received from you, your agent or Authorized Agent, or an individual whom any Indemnified Party believes to be authorized to act on your behalf;

ii. any erroneous, mismatched, or incomplete identifying information on any Electronic Funds Transfer instruction;

iii. your failure to perform your Obligations hereunder, including without limitation your failure to satisfy any Obligations due to us or to deliver in a timely manner in Good Deliverable Form any Collateral sold for your Self-Directed Account;

iv. a breach of any representation, warranty, or covenant made by you hereunder or any subsequent false or misleading statement or representation made by you or your Authorized Agent(s);

v. any act or omission by you with respect to any of your accounts;

vi. your failure to comply with any provision of Applicable Law;

vii. any action taken by Morgan Stanley or our affiliates to enforce our rights under this Self-Directed Account Agreement;

viii. any Event of Default by you; and

ix. any violation or infringement by you or your Authorized Agent(s) of any copyright or other intellectual property right.

## 16. Other Provisions and Disclosures

### A. Compliance with Laws

You understand and agree to comply with Applicable Law, including without limitation the economic sanctions administered by OFAC and OFAC's List of Specially Designated Nationals and Blocked Persons. You understand and agree that you may not use your Self-Directed Account or the Service for illegal activity. You agree to indemnify, defend, and hold Morgan Stanley harmless from every action, proceeding, claim, loss, cost, and expense (including attorney fees) suffered or incurred by us due to any U.S. or foreign government entity's seizing, freezing, or otherwise causing Morgan Stanley to suspend the Service, or any aspect of the Service, or restrict transactions in or assert control over any Self-Directed Account or securities or funds in a Self-Directed Account when purportedly caused by or arising out of your action or inaction. This applies whether or not such action is ultimately determined to be authorized under the laws of the United States or its territories or of any foreign jurisdiction. We are not required to inquire about or determine the authority of any action taken by the U.S. or foreign government entity prior to acceding to any legal process initiated by it.

To comply with regulations aimed at the prevention of money laundering, Morgan Stanley reserves the right to request such information as is necessary to verify your identity, as well as the source of any funds transmitted by you. In the event of delay or your failure to produce any information required for verification purposes, Morgan Stanley may refuse to accept any further orders for transactions in or for your Self-Directed Account and may terminate this Self-Directed Account Agreement. You understand and agree that in certain circumstances Morgan Stanley may be required to provide information about you to regulatory authorities and to take other or further actions as may be required or authorized by law.

### B. Power and Authority

If you are a natural person, you represent that you have attained the age of majority and have the legal capacity to enter into this Self-Directed Account Agreement and perform your Obligations under it. If you are a legal entity, including a corporation, partnership, estate, or trust, you represent that you have all the necessary power and authority to execute and perform your Obligations under this Self-Directed Account Agreement and that the execution and performance of this Self-Directed Account Agreement will not cause you to violate any provisions in the charter, by-laws, partnership agreement, trust agreement, or other constituent agreement or instrument. You further represent that this Self-Directed Account Agreement, as amended from time to time, is your legal, valid, and binding obligation, enforceable against you in accordance with its terms.

### C. Electronic Signatures

Your intentional action in electronically signing the Account Application is valid evidence of your consent to be legally bound by this Self-Directed Account Agreement and by other documentation submitted by you or provided to you in the Account Application process (this Self-Directed Account Agreement and any such other documentation, the "**Account Documents**") or governing your relationship with Morgan Stanley in connection with your Self-Directed Account and the Service provided hereunder. The use of electronic versions of the Account Documents fully satisfies any requirement that they be provided to you in writing so long as you have not opted out of electronic delivery in accordance with Section 17 "Electronic Delivery (eDelivery)" of this Self-Directed Account Agreement.

You acknowledge that you may access and retain a record of the Account Documents through etrade.com. You understand and agree that you are solely responsible for reviewing and understanding all the terms and conditions of the Account Documents.

The electronically stored copy of this Self-Directed Account Agreement is considered the true, complete, valid, authentic, and enforceable record of your acknowledgment of this Self-Directed Account Agreement, admissible in judicial and administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form. You agree to not contest the admissibility or enforceability of the electronically stored copy of this Self-Directed Account Agreement in any proceeding arising out of the terms and conditions of this Self-Directed Account Agreement. If more than one individual has electronically acknowledged this Self-Directed Account Agreement, their Obligations under this Self-Directed Account Agreement will be joint and several and identical to the Obligations of joint account holders who have acknowledged a paper Self-Directed Account Agreement.

## 17. Electronic Delivery (eDelivery)

By agreeing to eDelivery on the Account Application, you understand and agree that you are enrolling in eDelivery and providing your informed and positive consent to receive eligible eDelivery Documents (as defined below) electronically by providing us notification to the email address you provide. Documents may include, but are not limited to, general correspondence, account statements, transaction confirmations, prospectuses, proxy solicitations, performance reports, corporate action credit advices, account documentation (including your client agreements and any amendments to such agreements), the Morgan Stanley Smith Barney Client Relationship Summary, the Important Account Information for Self-Directed Accounts, the U.S. Privacy Policy and Notice, and all documents that Morgan Stanley may add to eDelivery in the future (collectively "**eDelivery Documents**").

When you enroll in eDelivery, you consent to the electronic delivery of all eDelivery Documents and further agree and understand that you will not receive, and Morgan Stanley is not obligated to provide, hard copies of any eDelivery Documents unless specifically requested by you. We may impose a charge for any requested hard copy.

By enrolling in eDelivery, you also agree to electronic delivery of syndicate and other offering materials, including preliminary prospectuses and other offering documentation (including but not limited to pricing terms where applicable) for equity initial public offerings, secondary offerings, and follow-ons, as well as new-issue structured investments and new-issue municipal and other fixed income securities ("**Syndicate Offerings**"). Participation in many Syndicate Offerings requires eDelivery enrollment. If you do not enroll in eDelivery, you may not be able to participate in certain Syndicate Offerings.

You may change or revoke your eDelivery preferences at any time by updating your eDelivery settings on etrade.com or by contacting Customer Service at 800-387-2331 (or +1 678-624-6210 from outside the United States). You understand that it may take up to three days to process a revocation of consent to eDelivery and that you may receive electronic notifications during that time.

After enrolling in eDelivery, you will receive eDelivery Documents electronically by accessing them on etrade.com after being notified by email that eDelivery Documents are available for your review. The email address that you provide will be used to send notifications of document availability to you for all selected accounts and document types associated with your etrade.com user ID.

If at any time we are unable to deliver email notifications to the email address you provided, we will notify you by regular mail. Depending on the reason for the failure, we may immediately suspend eDelivery, which will result in hard copy delivery of eDelivery Documents until you revalidate your email address. **Accounts that have eDelivery suspended will not be able to participate in certain Syndicate Offerings that require eDelivery of preliminary prospectuses and other documents.**

You understand and accept that certain risks are associated with communications through the internet, including but not limited to unauthorized access, systems outages, and delays and disruptions in telecommunications services and/or the internet. Email is not private or secure. The eDelivery notices sent to you by email are not encrypted. Although such eDelivery notifications are not intended to include personally identifiable information, they may contain, in their design, part or all of your name or other identifiers that could be seen or intercepted by others if delivered to electronic servers or devices not exclusively under your control.

You agree to check etrade.com regularly for up-to-date information and to avoid missing time-sensitive information in addition to monitoring for any eDelivery notifications.

Although eDelivery Documents are provided without charge, you understand that other online subscription or access fees by internet service providers may apply. In addition to a valid email address, there are minimum computer hardware and software requirements necessary to receive and view your eDelivery Documents, including but not limited to an internet connection and internet browsing software. It is your responsibility to maintain the ability to access and open eDelivery Documents. Morgan Stanley will notify you of any changes in the hardware and software requirements needed to access electronic records required for eDelivery Documents.

You may have access through etrade.com to an archive of documents you received via electronic delivery for at least the current year, such as account statements, tax documents, and trade confirmations. Morgan Stanley will maintain an electronically accessible archive of your eDelivery Documents on our secure client website for up to seven years after document publication. You are responsible for archiving eDelivery Documents beyond seven years. You agree that, notwithstanding your request for electronic delivery of eDelivery Documents, we may, at our discretion, terminate eDelivery and/or send you copies of any eDelivery Documents in hard copy form.

You understand and agree that Morgan Stanley shall have no obligation to deliver any Self-Directed Account documents, notices, or communications to an Authorized Agent unless explicitly instructed by you.

You understand that we reserve the right to post certain eDelivery Documents to etrade.com without providing notice to you and that such posting constitutes proper notice to you. You agree to check etrade.com regularly, as you may have no other means of knowing that certain information and eDelivery Documents have been delivered to you. You agree that all eDelivery Documents provided to you in any of the ways described above will be deemed to be good and effective delivery to you when sent by Morgan Stanley, regardless of whether you actually receive or access the eDelivery Documents in a timely manner.

## 18. Trusted Contact Person

You understand that you may designate an individual at least 18 years of age as your Trusted Contact Person ("**TCP**") at your discretion. Although you are not required to designate a TCP, Morgan Stanley is required to make reasonable efforts to obtain the name and contact information of a TCP for your Self-Directed Account. You understand that Morgan Stanley may monitor your Self-Directed Account to prevent financial exploitation of vulnerable clients.

By designating a TCP, you are authorizing Morgan Stanley to disclose information about you and your Self-Directed Account in certain circumstances, including to address possible financial exploitation and to confirm the specifics of your current contact information, your health status, or the identity of any legal guardian, executor, trustee, or holder of a power of attorney or as otherwise permitted by Applicable Law. You may add, remove, and change your TCP at any time by logging into your account. Your TCP will have no trading authority or power of attorney over your Self-Directed Account(s) and will not be authorized to make any decisions on your behalf regarding your Self-Directed Account(s). If you have declined to provide a TCP or your named TCP cannot be contacted, you further understand and agree that, consistent with applicable law, rule, or regulation, in order to address potential fraud/financial exploitation or your apparent lack of capacity, we may, but generally are not obligated to, contact any party reasonably associated with you.

You acknowledge that Morgan Stanley may, at our sole discretion under the circumstances, report any reasonable belief of financial exploitation, or in other circumstances that Morgan Stanley believes are necessary for your protection, to the applicable state securities administrator, to a state adult protective services agency, or to law enforcement agencies.

## 19. Restrictions and Account Terminations

You agree that at any time Morgan Stanley may, at our discretion and without notice to you, decline, cancel, or reverse your orders or instructions or place trading, disbursement, or other restrictions on your Self-Directed Account(s). We may restrict your Self-Directed Account(s) and/or the assets in your Self-Directed Account(s), if necessary, to comply with a subpoena, court order, judgment, child support order, garnishment, divorce, tax levy, tax withholding obligation, escheatment obligation, other legal obligation, law, rule, regulation, or other similar requirement or request, or to protect either your interests or the interests of Morgan Stanley or our affiliates, including but not limited to circumstances involving suspected fraud or client incapacity. You agree to indemnify and hold Morgan Stanley harmless from any claims, losses, or damages caused by or related to any such restrictions.

In the event that Morgan Stanley receives inconsistent instructions from any account owner or Authorized Agent regarding your Self-Directed Account(s), including but not limited to purchase and sale orders (including Short Sales) and funds or securities disbursement requests, we are authorized, at our discretion and without incurring any liability due to fluctuating market conditions or otherwise, to do any one or more of the following: (a) suspend all activity in your Self-Directed Account(s); (b) refuse to buy, sell, or trade any security or commodity and refuse to disburse any funds and/or securities except on receipt of written instructions signed by all of the account owners or Authorized Agents; (c) close your Self-Directed Account(s) and send you all funds, monies, or other Collateral to the address of record; and/or (d) file an interpleader action in any court with proper jurisdiction, in which event we shall be entitled to recover all costs, including but not limited to attorney fees associated with such action.

In the event of a dispute regarding the ownership or control of your Self-Directed Account(s) or any assets therein, Morgan Stanley may refuse to accept instructions for transactions in your Self-Directed Account(s) and we may restrict the assets in your Self-Directed Account(s) to prevent withdrawals or distributions until any such disputes are resolved to our satisfaction. You agree that, in the event we do restrict your Self-Directed Account(s) or the assets therein, we shall not be liable for any damages suffered as a result, including but not limited to damages resulting from fluctuations in the market value of the securities held in your Self-Directed Account(s).

You agree that Morgan Stanley may, at any time and for any reason, without notice to you, to the extent permissible under Applicable Law, regulation, rule, or other documents governing your Self-Directed Account(s), terminate or otherwise restrict any or all services provided by Morgan Stanley to you, or, at our discretion, close your Self-Directed Account(s) or resign as custodian of your IRA(s) or CESA(s). You may at any time close your Self-Directed Account(s) by giving Morgan Stanley notice. You agree that Morgan Stanley may automatically close your Self-Directed Account(s) if you fail to deposit any funds within 90 days of account opening.

When your Self-Directed Account(s) is closed or restricted, we may immediately cancel all open orders and terminate all services provided to such Self-Directed Account(s), including but not limited to your ability to write checks, use your debit card, or use other cash management services. You understand and agree that we may, at our discretion, require that you return all debit cards and unused checks to us, or destroy them, and that we may restrict any assets in your Self-Directed Account(s) until you have returned all debit cards and unused checks to us or you have notified us in writing that all debit cards and unused checks have been destroyed.

Upon the closing of your Self-Directed Account(s), or upon our declining, canceling, or reversing any of your orders or instructions or placing any trading, disbursement, or other restrictions on your Self-Directed Account(s), whether done at your instruction or at our discretion, you exclusively shall be liable for any change in the value of assets in your Self-Directed Account(s) due to market fluctuation. In connection with a request to close your Self-Directed Account(s), you agree to instruct us regarding the disposition of assets remaining in such Self-Directed Account(s). If, after a reasonable period of time, we do not receive your instructions regarding the disposition of assets remaining in your closed Self-Directed Account(s), we may, but are not obligated to, liquidate the assets remaining and send you the amount of the resulting cash balance. You understand and agree that such liquidation may occur regardless of current market conditions, that the proceeds of any liquidated assets will not earn interest, and that such liquidation may result in tax consequences for which you solely are responsible. Alternatively, we may but are not obligated to transfer any remaining securities into your name and deliver them to you together with any remaining cash balance.

You acknowledge that you solely, and not Morgan Stanley, are responsible for any losses, fees, costs, or charges you may incur as a result of our liquidation of the assets remaining in your Self-Directed Account(s) under any of the circumstances previously set forth. Your Self-Directed Account(s) will be closed after all the assets remaining have been transferred or liquidated and the proceeds delivered or paid to you. You understand and agree that, until your Self-Directed Account(s) is closed, your Self-Directed Account(s) will continue to be charged applicable fees.

You understand and agree that closing, terminating, or restricting your Self-Directed Account(s) will not affect any Obligations that you may have in connection with such Self-Directed Account(s), including but not limited to the Obligation to pay for securities transactions, debit card transactions, checks, or any other charges. This Self-Directed Account Agreement will continue to govern matters relating to your Self-Directed Account(s) that arose before your Self-Directed Account(s) was closed, terminated, or restricted or that may arise after the closing, termination, or restriction of your Self-Directed Account(s).

If, after your Self-Directed Account(s) is closed, we receive any dividends, interest, or other payments with respect to assets previously held in your closed Self-Directed Account(s), we will send to you, based on instructions you provided to us, any such dividends, interest, or other payments, minus any amounts owed to Morgan Stanley. If you have not provided us with instructions, we may liquidate any assets received and send to the last address that we have on file for you the proceeds of such liquidation(s), as well as any other payments received, minus any amounts owed to Morgan Stanley. You agree that we may charge you any applicable fees resulting from our receipt of such dividends, interest, or other payments.

In the event of your death, you agree that Morgan Stanley shall have no liability for following instructions received from you or your Authorized Agents(s) prior to Morgan Stanley's receiving notice of your death, even if such instructions are followed after your death or after we receive notice of your death.

You agree that, if your Self-Directed Account(s) is an individual account, upon receiving notice of your death and prior to the appointment of an executor or administrator, Morgan Stanley may, at our discretion, close any open positions held, cancel any open orders, or take any action we deem necessary to protect your estate or Morgan Stanley. You agree that Morgan Stanley shall not be liable in any way for any depreciation in the value of assets in your Self-Directed Account(s) due to market fluctuation subsequent to your death.

You understand and agree that when Morgan Stanley serves as the Internal Revenue Service–approved nonbank custodian for your IRA(s) and/or CESA(s), the applicable IRA and CESA custodial or plan documents governing those accounts specify the terms and conditions under which Morgan Stanley may resign or be removed as custodian.

## 20. Class Action Service (applicable only if you have not opted out)

You understand and agree that eligible Morgan Stanley accounts, including your Self-Directed Account, are automatically enrolled in the Class Action Service (the "**Class Action Service**"); however, you must affirmatively contact Customer Service to enroll any of your closed account(s) into the Class Action Service. If you do not request to have your closed account(s) enrolled, such closed account(s) will not be included in the Class Action Service.

If your account(s) is excluded from the Class Action Service, you may still participate in a class action lawsuit by submitting a paper-based claim form directly to the claims administrator.

You understand and agree that the enrollment of your account(s) in the Morgan Stanley Class Action Service authorizes Morgan Stanley to automatically file a claim on your behalf if Morgan Stanley receives notice of a potential class action lawsuit that impacts securities purchased in your account(s) ("**Impacted Security**").

In order for Morgan Stanley to file a claim and collect proceeds on your behalf, Morgan Stanley may be requested by a third-party claims administrator to provide your personal information, including but not limited to your name, address, age, and/or Social Security number to validate your eligibility in the class. Morgan Stanley has no oversight or control over such third parties, including over the way they protect, use, or retain your personal information. By using the Class Action Service, you authorize Morgan Stanley to share your personal information with third-party claims administrators for this purpose, and you agree that you will not hold Morgan Stanley responsible for any Losses or damages resulting from such third-party claims administrator's processing, mishandling, or failing to adequately protect your personal data. Once you are enrolled in the Class Action Service, this authorization will remain in effect, notwithstanding your disability or death, until we are notified to discontinue this authorization by you or your Authorized Agent.

If you are entitled to any class action settlement, you will receive a credit to the account(s) in which the purchase of the Impacted Security took place if the account(s) remains open or, if a settlement is received after you close the account(s) in which the purchase of the Impacted Security took place, a check will be mailed to the most recent address that we have on file for your closed account(s) irrespective of whether you still have other open accounts enrolled in the Class Action Service.

Please note that the definition of Impacted Security does not extend to securities impacted by "**Fair Funds**" recovered by the SEC, and any reference to a "class action lawsuit" does not include Fair Funds matters. You understand that in order to participate in a Fair Funds distribution, you must submit a claim form and any required supporting documentation directly to the Fair Funds claims administrator.

You understand that the Class Action Service is administered by a third-party vendor. **You agree that, in exchange for administering the Class Action Service, our third-party vendor will deduct 6% from any class action settlement payment received on your behalf as part of the Class Action Service.**

You understand that you may cancel your enrollment in the Class Action Service at any time by notifying Customer Service at 800-387-2331 (or +1 678-624-6210 from outside the United States). If you cancel your enrollment in the Class Action Service and wish to reenroll, you understand that you will be required to agree to the terms and conditions for the Class Action Service in effect at the time of reenrollment. You agree that canceling your enrollment in the Class Action Service after a claim has been filed on your behalf will not remove you from participation in that particular class action lawsuit. Morgan Stanley reserves the right to terminate the Class Action Service at any time with notice to you.

You understand that once your account(s) is enrolled in the Class Action Service, you will be notified prior to the submission of any class action claim for which your account(s) is eligible, to provide you with an opportunity to exclude your account(s) from a specific class action lawsuit. While your account(s) remains enrolled in the Class Action Service, you may choose to opt out of any particular class action lawsuit by notifying Customer Service within 15 Business Days from the date you receive notice of the class action lawsuit.

You understand that if you do not opt out within the 15 Business Day time frame, the Class Action Service will automatically file a class action claim on your behalf. You agree that you cannot opt out of a class action lawsuit once the Class Action Service has filed a class action claim on your behalf. You further agree that you cannot separately bring a lawsuit on your own behalf, either contemporaneously or in the future, against any named defendant in connection with such particular class action lawsuit. You further understand and agree that once the Class Action Service files a class action claim on your behalf, you will not assert: (a) any dissenters' or similar rights under any Applicable Law, rule, or regulation; (b) any right to require partition or appraisal of any company that is the subject of a potential class action lawsuit or of any of said company's assets or to cause the sale of such company's property; or (c) any right to maintain any action for partition or to compel any sale with respect to shares held by other shareholders or with respect to any of said company's property.

You understand and agree that the enrollment of your account(s) in the Class Action Service does not guarantee that you will receive a settlement payment for any given class action lawsuit. Neither Morgan Stanley nor our affiliates take any responsibility for the outcome of any given class action lawsuit, and you agree to indemnify and hold Morgan Stanley and our affiliates harmless from all actions taken in connection with the Class Action Service. You further understand that the greater the number of clients enrolled in the Class Action Service, the smaller any potential settlement payment received by each client will be in the event of any class action settlement recovery.

You understand and agree that neither Morgan Stanley nor our affiliates express any opinion or belief about your participation in the Class Action Service, which may include the filing of a claim on your behalf in a class action lawsuit involving an Impacted Security for which Morgan Stanley or our affiliates were a syndicate leader or an underwriter and/or continue to make a market. You understand that if you have any objections or concerns regarding, or would like to inquire into, the nature of Morgan Stanley's relationship to any Impacted Security, you may contact Customer Service for more information and/or to exercise your right to opt out of a specific class action lawsuit within 15 Business Days from the date you receive notice of the lawsuit.

# Options Supplement

You understand that options trading is highly speculative and contains a high degree of risk and that options trading may not be appropriate for all investors. You understand and agree that prior to completing an Account Application to add options trading functionality to your Self-Directed Account(s), you will carefully review and consider your financial situation, investment objectives, and risk tolerance and ability to withstand risk. You agree that you will engage in options trading only if, based on that review, you are fully prepared financially to undertake such risks and to withstand any and all Losses incurred, including total loss of the premium or in excess of premium plus transaction costs (including but not limited to any applicable hard-to-borrow interest charges). You understand that Morgan Stanley reserves the right to terminate, restrict, or reduce your options trading privileges at our discretion to protect Morgan Stanley and/or our clients.

You agree to release, indemnify, and hold Morgan Stanley harmless from and against any Losses arising out of or relating to any action taken pursuant to this Options Supplement.

The provisions of this Options Supplement shall be considered supplementary to any other agreement with Morgan Stanley. In the event of an inconsistency or discrepancy between this Options Supplement and any other agreement or document, the following rules shall be used to resolve the inconsistency or discrepancy: if the inconsistency or discrepancy relates to the services provided under this Options Supplement, the terms of this Options Supplement shall govern; if the inconsistency or discrepancy relates specifically to an additional product, program, or service, the terms of the agreement or document for that product, program, or service shall govern.

## 1. OCC Disclosure; Applicable Rules and Regulations

You acknowledge receipt of the "Characteristics and Risks of Standardized Options" document and the "Special Statement for Uncovered Options Writers" document. You acknowledge and agree that you have read and fully understood the terms, conditions, and risks of options trading as set forth in these documents, which are issued and amended from time to time by the Options Clearing Corporation ("**OCC**"), before entering into any purchase or sale of any listed options. You further understand and agree that each options transaction is subject to Applicable Law. You agree that, acting alone or in concert with others, you will not violate directly or indirectly, or contribute to the violation of, any position or exercise limits imposed by Morgan Stanley, the OCC, or any other regulatory authority having jurisdiction over any exchange or market on which options are traded or otherwise subject to Applicable Law.

## 2. Accuracy of Supplied Information

You represent that all information furnished to Morgan Stanley in connection with the opening of the options account is complete and accurate. Any information that you provide to Morgan Stanley in connection with your options Account Application applies only to your options activity in your Self-Directed Account and supersedes any previously provided information with respect to your options activity in your Self-Directed Account. You agree to immediately advise Morgan Stanley of any changes to your account profile, including your financial situation, and any other material changes to the information you provided to Morgan Stanley on your options Account Application.

## 3. Margin Requirements and Options Trading

You understand and agree that long options positions cannot be margined. There are, however, special margin requirements (discussed in the OCC's "Characteristics and Risks of Standardized Options" document) governing the writing of options that you agree to review before entering into any options transaction. You understand and agree that to process options orders, Morgan Stanley generally requires that your Self-Directed Account contain available funds equal to or greater than the purchase price of the options.

Morgan Stanley may process orders to purchase options even if your Self-Directed Account does not contain sufficient available funds. You understand that you are responsible for your own orders, including any orders that may exceed available funds in your Self-Directed Account. Please note that depending on the composition of your portfolio, time to expiration, market conditions, and the characteristics of your order, you may be subject to increased margin or equity requirements, which may reduce or otherwise impact the buying power and/or amounts currently available for withdrawal in your Self-Directed Account below the amounts displayed on or through the Service. Morgan Stanley reserves the right to decline, cancel, or reverse any order or other account instructions, including but not limited to the right to restrict you from closing one leg or part of a hedged options position to prevent an increase in market risk that may result in a deficit or unsecured debit in your Self-Directed Account.

You agree that Morgan Stanley is not liable in connection with any market makers' execution, handling, purchasing, exercising, or endorsement of options for your Self-Directed Account. You understand that options exchanges are intended to provide a market where options positions can be liquidated at any time, but there is no guarantee that such liquidity will be consistently available. If you fail to make payment or to pay Debit Balances when due, you acknowledge that Morgan Stanley is authorized, at our discretion and without notice to you, to take any action necessary to protect Morgan Stanley or you in connection with options transactions for your Self-Directed Account.

## 4. Exercises and Assignments

Morgan Stanley reserves the right to require sufficient securities and/or other property in your Self-Directed Account prior to enabling you to exercise an option. You understand and agree that Morgan Stanley may reduce the number of options exercisable based on the securities and/or other property in your Self-Directed Account and the credit risk posed to Morgan Stanley as determined by us.

You acknowledge that the OCC and the national securities exchanges have established cut-off times for delivering exercise instructions and that such cut-off times may be modified from time to time by the OCC and the national securities exchanges. You understand and agree that Morgan Stanley may, at our discretion, require that exercise instructions be delivered prior to such cut-off times. You understand and agree that it is your sole responsibility to (a) understand the applicable cut-off times for delivering exercise instructions on the options contracts in your Self-Directed Account and (b) deliver said instructions to Morgan Stanley before the applicable cut-off times. You understand and agree that your failure to meet the applicable cut-off times may result in the options expiring worthless, even though they might have had a monetary value on the expiration date. You understand and agree that Morgan Stanley is not obligated to give you prior notice of options expiration dates or any cut-off times for delivering exercise instructions and that you have the sole responsibility for taking action to exercise an options contract.

You understand and agree that Morgan Stanley has no obligation to exercise any option absent specific instructions from you. If you have not provided any instructions to Morgan Stanley and you own options that are about to expire "in-the-money," Morgan Stanley may, at our discretion and without notice to you, exercise the option. If such an exercise would require the purchase or sale of the underlying security for which you do not have sufficient funds or securities available, Morgan Stanley may, at our discretion and without notice to you, enter offsetting transactions to close out the position. Although Morgan Stanley has the discretion to take such action, we are not obligated to do so. In the event that Morgan Stanley exercises an in-the-money options contract for your Self-Directed Account, and in the absence of instructions from you, you understand and agree that Morgan Stanley may thereafter close out any resulting positions (e.g., buy-in short positions or sell long positions). You agree to reimburse Morgan Stanley for any expenses incurred by us in connection with any of the foregoing transactions.

You understand and agree that Morgan Stanley does not guarantee that short options that appear out-of-the-money will not be assigned and that Morgan Stanley does not guarantee that short options that appear in-the-money will be assigned.

You understand and agree that spread positions can have unique expiration risks associated with them and that they may require special attention on your part to manage such expiration risks. You understand and agree that you are responsible for managing this risk and all other risks associated with any unhedged spread legs that expire in-the-money. If you do not want to exercise an expiring in-the-money leg of a spread, you agree to notify Morgan Stanley by the cut-off time for delivering exercise instructions on the options contracts.

If an option is sold or written in a Cash Account, you understand and agree that:

i. With respect to a call option, which if exercised against you will require the delivery of securities sold, you will keep such securities in your Self-Directed Account until the expiration of the options period and will not sell or withdraw such securities. If the option is exercised, Morgan Stanley may deliver such securities to the purchaser without previous notice to you.

ii. With respect to any put option, which if exercised against you will require payment for securities purchased, you will keep in your Self-Directed Account sufficient funds for such payment until the expiration of the options period and will not withdraw such funds or use them for any purpose. If the option is exercised, Morgan Stanley may use such funds for the purchase of such securities without previous notice to you.

If an option is sold or written in a Margin Account where an exercise notice is assigned to your Self-Directed Account, you understand and agree that you must have sufficient cash in your Self-Directed Account to meet applicable margin requirements.

You understand and agree that selling or writing options may result in a short equity position in your Self-Directed Account and that, if the options are exercised or assigned, daily interest charges will accrue until the position is closed and settled. You understand that short positions may be subject to daily interest charges even if closed on the same day as the exercise or assignment and that multiple days of interest may be accrued for closing transactions that settle over weekends or holidays.

You understand that exercise assignment notices for options contracts are allocated among client short options positions in accordance with a random allocation method, and you agree to be bound by Morgan Stanley's random allocation method. To the extent you are assigned on fewer contracts than you held in a

series prior to expiration, assignment will be on a first in, first out tax lot basis unless you act before settlement of a transaction to choose a different lot selection method.

## 5. Options Activity; Generally

You understand and agree that you will not engage in transactions that are not permissible under the options level for which you are approved unless you receive written authorization from Morgan Stanley.

You understand and agree that Morgan Stanley may select the exchange or marketplace for the execution of multiple listed options.

You understand and agree that Morgan Stanley is under no obligation to convey to you any information relating to the underlying securities covered by an option, or any securities related thereto, or to any information relating to the options whether such information is then or thereafter known or available to Morgan Stanley.

## 6. Uncovered Options Disclosure

The "Characteristics and Risks of Standardized Options" document contains the "Risks of Buying and Writing Options," which describes some of the risks associated with writing uncovered options, but it is not intended to enumerate all the risks.

You understand and agree that there are special risks associated with uncovered options writing that expose you to potentially significant loss and that this strategy may not be appropriate for all clients approved for options transactions. We note some of the risks below, but you agree to read the "Risks of Buying and Writing Options."

i. The potential loss of uncovered call writing is unlimited. The writer of an uncovered call is in an extremely risky position and may incur large Losses if the value of the underlying instrument increases above the exercise price.

ii. The risk of writing uncovered put options is substantial. The writer of an uncovered put option bears a risk of Losses if the value of the underlying instrument declines below the exercise price. Such Losses could be substantial if there is a significant decline in the value of the underlying instrument.

iii. Uncovered options writing is thus appropriate only for the knowledgeable investor who understands the risks, has the financial capacity and willingness to incur potentially substantial Losses, and has sufficient liquid assets to meet applicable margin requirements. In this regard, if the value of the underlying instrument moves against your uncovered options position, Morgan Stanley may request significant additional margin payments. If you do not make such margin payments, Morgan Stanley may liquidate the stock or options positions in your Self-Directed Account(s) without notice to you.

iv. For combination writing, where you write both a put and a call on the same underlying instrument, the potential risk is unlimited.

v. If a secondary market in options were to become unavailable, you could not engage in closing transactions and an options writer would remain obligated until expiration or assignment.

vi. The writer of an American-style option is subject to being assigned an exercise at any time after they have written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period.

## 7. Retirement Accounts and Other Accounts

You understand and agree that in accordance with applicable regulations and Morgan Stanley policies, options trading in Retirement Accounts or custodial accounts carries special provisions and may be limited at Morgan Stanley's discretion.

You understand and agree that the use of margin to permit options transactions in Retirement Accounts presents certain risks that do not exist with similar transactions in other non–retirement Margin Accounts. You understand and agree that the Code places restrictions/limits on the amount of funds that can be deposited to Retirement Accounts and that deposits to Retirement Accounts in excess of such limits (such as to add Collateral to cover margin calls) may cause adverse tax consequences, including but not limited to forfeiture of tax advantages inherent in certain Retirement Accounts and/or the risk of penalties imposed by the Internal Revenue Service.

By requesting approval of Limited Margin for a Retirement Account, you represent that you are familiar with the terms, conditions, and risks associated with options, including spreads, in Retirement Accounts and that you understand the potential tax consequences of the planned options activity.

You understand that under Section 408(e)(4) of the Code, if you pledge any part of your Retirement Account as security for a loan, the part pledged will be treated as a distribution to you. You understand that you should consult a professional tax advisor before using options spreads in your Retirement Account. You understand and agree that you are responsible for the use of options, including spreads, in your Retirement Account, and you understand and agree that you are responsible if such use results in a prohibited pledge of the assets and, therefore, is deemed a distribution from your Retirement Account.

You understand and agree to consult a professional tax advisor before engaging in anticipated options transactions in a Retirement Account that could give rise to any prohibited transactions within the meaning of Section 4975(c)(1) of the Code or other Applicable Law. You understand and agree that you are responsible if such use results in any prohibited transactions.

You understand and agree to assume all responsibility for reviewing the terms of your options transactions in your Retirement Account, and you agree to not implement options transactions, including spreads, that can result in Obligations in excess of the Retirement Account balance.

You understand and agree that Morgan Stanley is not responsible for denying or canceling order instructions for any transaction due to an insufficient balance in your Retirement Account and that Morgan Stanley may not be able to transfer assets to a Retirement Account from a non–Retirement Account.

You further agree to indemnify and hold Morgan Stanley harmless from and against any Losses arising directly or indirectly from your use of options in your Retirement Account.

## 8. Packaged Retail and Insurance-Based Investment Products

As may be applicable to European Economic Area residents, with respect to any options transactions you agree that you have been provided with a Key Information Document ("**KID**") for the purposes of the EU Regulation on packaged retail and insurance-based investment products (EU No 1286/2014) (the "**PRIIPs**

**Regulation**") by means of a website, portal, or any other durable medium other than paper and are aware that you have the right to request a paper copy of the KID free of charge. Any KID that you have been provided access to by means of a website/portal, including any updates, will be made available at https://www.theocc.com/about/publications/kids.jsp. You agree to review the KID, including any updates, in good time before being bound by any contract or offer relating to any options transactions on a trade-by-trade basis.

# Margin Supplement

The provisions of this Margin Supplement shall be considered supplementary to any other agreement that you have acknowledged. Except as specifically amended by this Margin Supplement, all the terms and conditions of any other agreement shall remain effective. In the event of an inconsistency or discrepancy between this Margin Supplement and any other agreement or document, the following rules shall be used to resolve the inconsistency or discrepancy: if the inconsistency or discrepancy relates to the services provided under this Margin Supplement, the terms of this Margin Supplement shall govern; if the inconsistency or discrepancy relates specifically to an additional product, program, or service, the terms of the agreement or document for that product, program, or service shall govern.

1. **You understand and agree that when you trade on margin, you are borrowing money or securities from Morgan Stanley. You understand and agree that while trading on margin may present a greater opportunity for profit, it also presents a higher degree of risk and the possibility of greater Losses than in transactions where you do not borrow money. You understand and agree to carefully consider whether trading on margin is appropriate in light of your financial resources, investment objectives, risk tolerance, and other relevant circumstances.**

2. A Margin Account allows you, in accordance with Applicable Law, to borrow money or securities from Morgan Stanley using acceptable securities or cash as Collateral. While all Collateral is pledged to secure Obligations to Morgan Stanley, only certain securities, as specified by Applicable Law and/or as determined by Morgan Stanley at our discretion, will constitute acceptable Collateral when calculating your margin requirement. You understand and agree that the amount of Collateral required by Morgan Stanley in connection with a margin loan will be the greater of the amount required by Applicable Law or the amount required by Morgan Stanley at our discretion. You understand and agree that Morgan Stanley reserves the right to modify, increase, or decrease margin requirements in the Margin Account at any time at our discretion, including intraday; to impose margin requirements in excess of those required by law, regulation, or rule; or to refuse to extend credit or to permit trading on margin at any time for any reason, including without notice. You further understand and agree that Morgan Stanley may restrict the use of margin on certain securities where Morgan Stanley receives remuneration from issuers for purchases by our clients for 30 days or more due to potential conflicts of interest and to comply with Applicable Law.

3. **Collateral**

   i. **Security interest.** As security for the payment of any Obligation owed to Morgan Stanley or our affiliates, you understand and agree that you grant Morgan Stanley a first-priority lien on, continuing security interest in, and right of setoff to (a) all Collateral that is held, carried, or maintained for any purpose in or through any of your accounts, whether owned individually, jointly, or in the name of another person or entity over which you have authority or in which you have a beneficial interest; and (b) all Collateral, with respect to securities transactions you enter into with or through Morgan Stanley, held by or for Morgan Stanley, Morgan Stanley's agent, or your agent, or under the direction

or control of any exchange or clearing organization through which transactions on your behalf are executed or cleared. You understand and agree that all Collateral (including Collateral held by you at an affiliated entity of Morgan Stanley) will secure any Obligations you have to Morgan Stanley in connection with activity in the Margin Account. You understand and agree that securities and/or other property will constitute Collateral even where such securities and/or other property have no margin value under Applicable Law or Morgan Stanley's policies.

ii. **No other liens.** All Collateral upon delivery to Morgan Stanley shall be free and clear of all prior liens, claims, and encumbrances (other than liens solely in favor of Morgan Stanley), and you agree to not cause or allow any of the Collateral, whether now owned or hereafter acquired, to be or become subject to any liens, security interests, mortgages, or encumbrances of any nature other than security interests solely in Morgan Stanley's favor. Furthermore, Collateral consisting of securities and other property shall be delivered in Good Deliverable Form (or Morgan Stanley shall have the power to place such securities in Good Deliverable Form) in accordance with the requirements of the primary market or markets for such securities.

iii. **Perfection.** You agree to execute such documents and take such other actions as Morgan Stanley shall reasonably request to perfect our rights with respect to any such Collateral. You agree to pay the fees for any filing, registration, recording, or perfection of any security interest contemplated by this Self-Directed Account Agreement and Margin Supplement and to pay, or cause to be paid, from the Margin Account(s) any and all taxes imposed on the Collateral by any authority. You acknowledge and agree that each Margin Account maintained by Morgan Stanley to which any Collateral is credited is a "securities account" within the meaning of Article 8 of the Uniform Commercial Code, as in effect in the NYUCC, with respect to securities held in the Margin Account and is a "deposit account" within the meaning of Article 9 of the NYUCC with respect to cash deposited in or credited to the Margin Account. You also acknowledge and agree that all property and assets held in or credited from time to time to such Margin Account other than cash shall be treated as a "financial asset" for purposes of Article 8 of the NYUCC. Morgan Stanley is a "securities intermediary" within the meaning of Article 8 of the NYUCC and is acting in such capacity with respect to each such Margin Account that it maintains.

iv. **Effect of security interest.** You understand and agree that Morgan Stanley's security interest in the Collateral shall (a) remain in full force and effect until the payment and performance in full of your Obligations under this Self-Directed Account Agreement and Margin Supplement; (b) be binding on you, your successors, and permitted assigns; and (c) inure to the benefit of, and be enforceable by, Morgan Stanley and our respective successors, transferees, and assigns.

v. **Enforceability and netting.** You understand and agree that in addition to and without limiting the foregoing, in the case of (a) any failure by you to make any payment when due hereunder, (b) any failure by you to meet Morgan Stanley's margin calls promptly, or (c) your becoming subject to any receivership, insolvency, liquidation, resolution, or similar proceeding, any and all Obligations owed to Morgan Stanley shall (to the extent not already due and payable) become immediately due and payable. You understand and agree that Morgan Stanley may (a) liquidate, terminate, or accelerate your open positions in whole or in part and/or (b) set off (including by setoff, offset, netting, combination of accounts, deduction, counterclaim, retention, or withholding across or within each or

all of the securities positions) Morgan Stanley's obligations to you against your Obligations to Morgan Stanley or we may apply or set off margin posted in favor of you against Morgan Stanley's obligations to you.

4. **Margin Requirements**

i. You understand and agree that Morgan Stanley will not extend credit to a Margin Account that does not have at least $2,000 ($25,000 in the case of Pattern Day Traders) in equity or such higher amount as Morgan Stanley or Applicable Law may require. Generally, Morgan Stanley may loan up to 50% of the value of common stock purchased in the Margin Account, although the initial margin requirements for individual securities and transactions may differ according to Applicable Law and at Morgan Stanley's discretion. You agree to deposit sufficient funds into the Margin Account prior to settlement of any transaction effected in the Margin Account.

ii. You understand and agree to maintain a minimum amount of equity in the Margin Account to collateralize all outstanding loans and Obligations. You understand and agree that if the value of the Collateral in the Margin Account falls, or if the value of a security sold short increases, you may be required to deposit more assets (a "**margin call**") into the Margin Account as additional Collateral. Morgan Stanley may, at our discretion, require a maintenance margin of an amount and type that varies from and may be higher than the requirements under Applicable Law, regulation, or rules.

iii. You understand and agree that in the event that you fail to make a required deposit, Morgan Stanley may liquidate all or part of your securities and/or other property or buy- in any securities sold short—all without prior notice to you.

iv. You understand and agree that certain securities and/or other property may not serve as Collateral in the Margin Account. You understand and agree that Morgan Stanley retains the right to refuse at any time to offer credit on certain securities.

5. **Short Sales**

i. You understand and agree that Short Sales in a Margin Account are subject to initial margin and margin maintenance requirements equal to the greater of the amount required by Applicable Law or the amount required by Morgan Stanley at our discretion.

ii. You understand and agree that if you sell a security short, Morgan Stanley will borrow the security from a third party for delivery at settlement. You understand and agree that if a borrowed security is recalled by the lender, Morgan Stanley will attempt to reborrow the security. You understand and agree that if Morgan Stanley is unable to reborrow the security, Morgan Stanley may cover your short position by purchasing the security on the open market at the then current market price, without notice to you.

iii. You understand and agree that for Morgan Stanley's protection, we may, at our discretion and without notice to you, immediately buy-in securities to cover any short position in the Margin Account.

iv. You understand and agree that the price of covering a short position may be higher than the price at which you sold short; therefore, you may sustain Losses on that transaction.

v. You understand and agree that Short Sale proceeds are part of the Collateral securing Morgan Stanley's loan of the security to you and that you may not withdraw these proceeds from the Margin Account. You understand and agree that you are liable for all dividends paid on securities that you

have sold short.

vi. You understand and agree that when Morgan Stanley borrows securities for your Margin Account, we are generally obligated to return the securities to the lender on demand. If you are unable to cover a short position (either through delivery of the security or through Morgan Stanley buying-in your position) in enough time for us to deliver the security to the lender, you agree to pay Morgan Stanley for any Losses we sustain as a result of the failure to deliver. For instance, if you have a short position in a security that is subject to a tender offer and you are unable to cover the position in time for us to deliver the security to the lender, Morgan Stanley may hold you responsible for the economic value of the tender offer.

vii. When conducting a Short Sale, you may be charged fees associated with the cost that Morgan Stanley incurs for locating and borrowing the security. Accordingly, you may have to pay borrow fees for the duration that the short position is hard-to-borrow. Although the estimated rate will be presented to you at the time of order entry, the borrow rate may be subject to change without notice, including intraday, depending on the availability of the security or other factors. Securities with high demand to borrow and limited lending availability may be classified as hard-to-borrow. Securities that are not hard-to-borrow are called easy-to-borrow. You understand and agree that as demand increases relative to supply, a particular security may become hard-to-borrow and therefore carry an interest rate payable by the short seller. If the position that you shorted was easy-to-borrow and then becomes hard-to-borrow, additional fees will apply for holding the settled short position each day it is deemed hard-to-borrow without notice to you of estimated rates before charges.

You understand and agree that positions opened and closed intraday may still be subject to hard-to-borrow fees due to the need to locate the security for settlement. You understand and agree that these fees may also be charged for any weekend or holiday in which the short position remains open. If a shorted security is delisted or halted, you may be unable to cover the shorted position and may be subject to hard-to-borrow fees on the short position until the securities are removed from your Self-Directed Account or the trading halt is lifted. You understand and agree that if you, through the exercise or assignment of an option, have a short hard-to-borrow position, you may be assessed the corresponding hard-to-borrow fee.

6. **Collateral; Liquidations and Covering Positions**

i. You understand and agree that Morgan Stanley may issue a margin call for any of the following reasons:

a. the value of the Margin Account's equity falls or the initial equity requirement is raised;

b. the value of any security sold short in the Margin Account rises;

c. you fail to promptly meet any call for additional Collateral;

d. you indicate to Morgan Stanley that you do not intend to meet a call for additional Collateral;

e. you file a petition for bankruptcy, or such a petition is filed against you;

f. you seek or acquiesce to the appointment of a receiver;

g. an attachment is levied against any account in which you have an interest;

h. the Margin Account is closed;

i. the Client's death; or

j. any other circumstances that in Morgan Stanley's opinion warrant such action.

ii. You understand and agree that margin calls require prompt delivery to Morgan Stanley of either additional funds or acceptable securities as determined by us. You understand and agree that Morgan Stanley retains absolute discretion in determining whether, when, and in what amounts we will require additional Collateral. You understand and agree that Morgan Stanley is not obligated to notify you when a margin call is due and can liquidate positions or buy-in any security to cover positions at any time without demand for additional funds, even if you have notified Morgan Stanley that you will be providing additional Collateral, including at any time before a margin call is due. You understand and agree that Morgan Stanley can liquidate any and all securities and/or other property in the Margin Account, whether carried individually or jointly with others. You understand and agree that the selection of assets to sell (or to buy-in to close against a short position) is solely at the discretion of Morgan Stanley and that factors such as your capital gains taxes or individual investment strategies may not be considered at the time of liquidation. You understand and agree that Morgan Stanley can buy and sell securities and/or other property that may be short in your Margin Account and can cancel any open orders. Morgan Stanley may, at our discretion, choose which securities and/or other property to buy or sell, which transactions to close, and the sequence and timing of such transactions.

You understand and agree that if Morgan Stanley elects to sell any Collateral, buy-in any property, or cancel any orders, such sale, purchase, or cancelation may be made on the exchange or other market where such business is then usually transacted, or at public auction or private sale, without advertising the same and without any notice to you of the time or place of the sale and without prior tender, demand, or call of any kind upon you. You understand and agree that Morgan Stanley may purchase or sell the property to or from a Morgan Stanley affiliate or third party in whole or in any part thereof free from any right of redemption and that you shall remain liable for any deficiency. You understand and agree that any prior demand or prior course of conduct, dealings, or notice will not be deemed a waiver of Morgan Stanley's right to take these actions.

**You understand and agree that your financial exposure could exceed the value of assets in the Margin Account, and in all cases you will remain liable for any Losses in the Margin Account, which are payable on demand.**

iii. You understand and agree that interest will accrue on any Debit Balance at prevailing margin rates until paid in full. You agree to reimburse Morgan Stanley for all reasonable costs and expenses incurred in the collection of any debits, including but not limited to attorney fees.

7. **Loan or Pledge of Securities**

You authorize Morgan Stanley to lend either to Morgan Stanley or to others any Collateral to the extent permitted by Applicable Law. You understand and agree that, within the limitations imposed by Applicable Law, all Collateral may be pledged and repledged and hypothecated and rehypothecated or otherwise used by Morgan Stanley, with all the attendant rights of ownership (including the right to vote the securities), for the sum due to Morgan Stanley or for a greater sum and for a period of time longer than the Obligations to which such Collateral was pledged by you and without Morgan Stanley's retaining in our possession and control a like amount of similar Collateral.

In the event that Morgan Stanley pledges, repledges, hypothecates, or rehypothecates any Collateral, you understand and agree that Morgan Stanley may receive and retain certain benefits to which you will not be entitled. You understand and agree that any dividend, interest payment, or other distribution paid to you with respect to such Collateral will be a payment in lieu of the dividend (also known as a "**substitute payment**") and credited to the Margin Account. Payments in lieu of dividends are reported as ordinary income, which would cause you, as the account holder with a taxable account, to lose the benefit of preferential tax rates on qualified dividend income under U.S. tax laws.

You understand and agree that in certain circumstances you may not be able to exercise voting rights of the securities that are lent by you or which have been pledged, borrowed, hypothecated, or rehypothecated by Morgan Stanley. For the purposes of the return of any Collateral to you, Morgan Stanley's return obligations shall be satisfied by delivering securities and/or other property of the same issuer, class, and quantity as the Collateral initially transferred. You understand and agree that any such pledge, repledge, hypothecation, or rehypothecation of any Collateral can occur without your being notified, either separately or together with other securities and/or other property of other clients of Morgan Stanley, for any amount due to Morgan Stanley in any account in which you have an interest.

8. **Disclosure of Credit Terms**

i. You understand and agree that you will be charged interest on a daily basis on all credit extended to you. Margin interest is calculated by multiplying the applicable margin interest rate by the daily close of business net settled Debit Balance and dividing by 360 (days). You understand and agree that margin interest accrues daily throughout the month and is added to your Debit Balance at month-end. The month-end interest charge is the sum of the daily accrued interest calculations for the month. You understand and agree that the accrued interest is added to your Debit Balance and that a new calculation is started each time the applicable interest rate changes and at the close of every statement month. You understand and agree that the use of a 360-day year results in a higher effective rate of interest than if a 365-day year were used.

ii. Information about current margin interest rates can be found at etrade.com/marginrates and is also available by calling Customer Service at 800-387-2331 (or +1 678-624-6210 for international callers). You understand and agree that the margin interest base rate is subject to change without notice during each period in accordance with fluctuations in your average daily Debit Balance and vacillations in the wider interest rate environment, including changes to the applicable federal funds rate, among other things.

iii. With respect to amounts immediately available for investment, you understand and agree that settled funds are used first. You further agree that it is your responsibility to monitor transactions and transaction settlements to avoid the unintended use of unsettled funds, and you acknowledge that margin interest charges will be applied to the amount of unsettled funds used for investment or withdrawal.

[1]Morgan Stanley Smith Barney LLC is a registered broker-dealer, not a bank. Where appropriate, Morgan Stanley has entered into arrangements with licensed banks and other third parties to assist in offering certain services.

[2]This Self-Directed Account Agreement is applicable to E*TRADE from Morgan Stanley brokerage, retirement, and advisory accounts (each a "Self-Directed Account"). E*TRADE from Morgan Stanley is a business of Morgan Stanley.

About Us +

Service +

Quick Links +

Connect with us

800-387-2331

**Please read all the important disclosures below.**

**Investing:**

Check the background of Morgan Stanley Smith Barney LLC on FINRA's BrokerCheck and see the Morgan Stanley Smith Barney LLC Relationship Summary.

**Investment Products • Not FDIC Insured • No Bank Guarantee • May Lose Value**

SIPC Securities in your account protected up to $500,000. For details please see www.sipc.org

**Banking:**

Banking products and services are provided by Morgan Stanley Private Bank, National Association, Member FDIC.

**Banking Products • FDIC Insured • Bank Guarantee**

FDIC *FDIC-Insured - Backed by the full faith and credit of the U.S. Government*

Equal Housing Lender

Securities products and investment advisory services offered by Morgan Stanley Smith Barney LLC, Member **SIPC** and a Registered Investment Adviser. Commodity futures and options on futures products and services offered by E*TRADE Futures LLC, Member **NFA**. Stock plan administration solutions and services offered by E*TRADE Financial Corporate Services, Inc., and are a part of Morgan Stanley at Work. Banking products and services provided by Morgan Stanley Private Bank, National Association, Member **FDIC**. All entities are separate but affiliated subsidiaries of Morgan Stanley. E*TRADE from Morgan Stanley and Morgan Stanley at Work are registered trademarks of Morgan Stanley.

**System response and account access times may vary due to a variety of factors, including trading volumes, market conditions, system performance, and other factors.**

For information on the **E*TRADE Customer Protection Guarantee** visit the **Security Center**.

**Statement of Financial Condition** | **About Asset Protection** | **Account Agreements and Disclosures** | **Quarterly 606 Report** | **Business Resiliency Plan**

©2025 E*TRADE from Morgan Stanley. All rights reserved. **Copyright Policy**

1w23m3-124w23m3